[No. B021284. Second Dist., Div. Two. Oct. 2, 1987.]

REBECCA TUSHINSKY, Plaintiff and Appellant, v. HARLAN ARNOLD, Defendant and Respondent.

COUNSEL

Lee W. Landrum for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, Ford R. Smith, Jules S. Zeman and Kenneth C. Byrne for Defendant and Respondent.

OPINION

FUKUTO, J.—■ ■ ■ ■ Rebecca Tushinsky appeals an order of dismissal in favor of Harlan Arnold following the sustaining of Arnold's demurrer to Rebecca's third amended complaint.[1]

In her pleading, Rebecca alleged the following. Rebecca retained Arnold, an attorney, to represent her in various matters concerning her family. Rebecca advised Arnold that her 12-year-old daughter had told her that Joseph S. Tushinsky, Rebecca's husband, the child's father, had been sexually abusing the child over a period of 5 years. Rebecca advised Arnold that "in exercising his authority as her attorney," he was to "do nothing which would result in [Joseph's] being criminally prosecuted for the sexual abuse [Rebecca] believed was being imposed upon her child." Rather, Arnold was to "ensure that [Joseph] would be psychiatrically treated and the matter would be handled in the [c]ivil [c]ourts only," in conjunction with the dissolution action Rebecca requested Arnold file on her behalf.

---

[1] Rebecca asserts that Arnold waived his right to file a demurrer to each of the amended complaints since he filed an answer to the original complaint. However, an amended pleading constitutes an abandonment of the issues raised by the original pleading and an amended pleading is, therefore, subject to the same pleading challenges as the original.

Arnold, in disregard of these instructions, advised Rebecca to file a petition under the Domestic Violence Prevention Act (DVPA) (Code Civ. Proc., § 540 et seq.), knowing that the district attorney had "no choice" but to investigate the allegations, "whereas had the question of the child molestation been relegated to the civil court," in conjunction with the dissolution action, "no criminal accusation would have arisen. . . ." Rebecca, following Arnold's advice, filed a DVPA petition, and, thereafter, a dissolution action against Joseph.[2]

Following an investigation of the allegations contained within the DVPA petition, the district attorney's office filed a criminal complaint against Joseph charging him with child molestation. Thereafter, the district attorney's office requested dismissal of the charges after publicly stating the case could not be successfully prosecuted due to the "manipulations" of Arnold. Arnold, in his "zeal" to bolster Rebecca's dissolution case, allowed the child to be hypnotized prior to Joseph's trial. This act, in effect, eliminated the child as a witness, since, under *People* v. *Shirley* (1982) 31 Cal.3d 18 [181 Cal.Rptr. 243, 641 P.2d 775], hypnosis-induced testimony is inadmissible. ██ ██ The loss of the only witness who could testify to the acts of sexual molestation caused the trial court to dismiss the criminal case.[3]

Following dismissal of the criminal complaint, Joseph filed a malicious prosecution action against Rebecca. He alleged that Rebecca's allegations of sexual molestation of the minor child by Joseph were false and that Rebecca did not "honestly, reasonably, and in good faith believe [Joseph] to be guilty of the crimes charged, and knew the charges to be false." Judgment was entered against Rebecca in favor of Joseph in the amount of $6.15 million.[4]

---

[2] A copy of the DVPA petition is attached to the third amended complaint. Rebecca, under penalty of perjury, stated that she and Joseph were "married and no Family Law proceeding is pending between us." Rebecca also stated that her daughter told her that she "is very frightened and very upset due to what has happened to her." Rebecca further stated that she believed "my husband is sick and requires medical help and would request the Court to order a proper investigation so that he may get such help." Rebecca's "immediate request," however, was that Joseph "be ordered removed from the family residence and have no contact with any of the members of the family until an investigation is concluded and the proper authorities authorize visitation." Rebecca ended her narrative by requesting that "no criminal proceedings be instituted against my husband and that this entire matter be resolved through the civil [c]ourts and the benefit of psychiatric help, which my husband can well afford."

[3] In recounting the allegations contained within Rebecca's third amended complaint, we do not mean to imply that such allegations are true. But, under settled law, we must regard them as true, however improbable they may be (to the extent they are not impeached by matters properly judicially noticed), for the purpose of passing on appeal on the validity of Arnold's demurrer to this pleading. (See *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 44 [170 Cal.Rptr. 533]; *Viso* v. *State of California* (1979) 92 Cal.App.3d 15, 19 [154 Cal.Rptr. 580].)

[4] Judgment was entered on August 6, 1984, and became final on December 27, 1984, when Rebecca abandoned her appeal from the judgment.

Following entry of judgment in the malicious prosecution case, Rebecca filed this action against Arnold. In a two-count, third amended complaint, Rebecca seeks recovery of damages for "Infliction of Emotional Distress and Negligence (Legal Malpractice)" and for "Breach of Confidence and Trust and for the Establishment of a Constructive Trust."

The trial court ruled with respect to the first cause of action that there was "no proximate cause" between Arnold's acts and Rebecca's injuries, and that Rebecca "is collaterally estopped to bring [the] cause of action." With respect to the second cause of action, the court held: "This does not make sense—constructive trust of what? No cause of action is stated nor can there be."

In this appeal, Rebecca contends: (1) the element of proximate causation has been sufficiently alleged; (2) the doctrine of collateral estoppel does not apply within the context of this case; and (3) ". . . the causes of action for . . . constructive trust and breach of confidence . . . are properly pleaded so as to be sufficient to withstand demurrer. . . ."

Arnold, relying primarily on *Weiner* v. *Mitchell, Silberberg & Knupp, supra,* 114 Cal.App.3d at page 39, contends that where it has been conclusively established in a prior action that a plaintiff in the second action was the sole proximate cause of his or her damages, the plaintiff is barred under the doctrine of collateral estoppel from relitigating that finding. In the instant case, according to Arnold, it was conclusively established in the malicious prosecution action that Rebecca, in filing false charges against Joseph, was the sole proximate cause of any damages she may have suffered.

In *Weiner,* a certified public accountant was indicted and convicted of securities fraud in accounting practices and making untrue statements to the Securities Exchange Commission. Following his conviction, the accountant filed a complaint against the attorneys who represented him in the investigation by the commission. He alleged causes of action in tort against the attorneys for malpractice, conspiracy, fraud, breach of fiduciary duty, and interference with prospective advantage, charging that his indictment was proximately caused by the attorneys' misconduct in their representation of him during the investigation by the commission. The attorneys demurred to the complaint, requesting the court to take judicial notice of facts stated in the appellate court's opinion and the judgment therein affirming the accountant's conviction of securities fraud. The court sustained the demurrer with leave to amend and, after the accountant refused to amend, dismissed his action. The *Weiner* court affirmed, holding that there was a complete lack of proximate causation between the torts alleged and the injuries the accountant allegedly suffered. The court found that the accountant was precluded by collateral estoppel from relitigating in his civil

action the proximate cause for his conviction, because that had been determined in the criminal prosecution to be the result of his guilt alone. (*Weiner* v. *Mitchell, Silberberg & Knupp, supra,* 114 Cal.App.3d at p. 39.)

■ Rebecca attempts to distinguish *Weiner* on the ground that in that case, the plaintiff, alone, committed the crime which caused him to be indicted and which led to his conviction. Thus, in the subsequent malpractice action, he was barred from asserting that "but for" the attorneys' negligence in the handling of his criminal action, he would not have been convicted. By contrast, in the instant case, Rebecca argues that her conduct in leveling false charges against Joseph was allegedly "thoroughly advised and was actually participated in by . . . Arnold. . . ." Thus, Rebecca contends, she cannot be considered to have been the sole proximate cause of the filing of the criminal charges against Joseph. In fact, because Arnold "controlled" her actions in asserting the false charges, he must be considered to have been either "the" proximate cause or "a" proximate cause of the filing of the criminal charges against Joseph. Rebecca's argument is not supported by either the allegations of the third amended complaint or the facts this court is entitled to judicially notice.

■ The doctrine of collateral estoppel obviates the need to relitigate issues in a second action already adjudicated in the first action. (*Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 671 [206 Cal.Rptr. 785].) ■ There are three prerequisites which must be shown before the doctrine will be applied: (1) the issue in the second action must be identical to the issue adjudicated in the first action; (2) the first action must have proceeded to a final judgment on the merits; and (3) the party against whom the collateral estoppel is to be asserted must have been a party, or in privity with a party, to the first action. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 603-604 [25 Cal.Rptr. 559, 375 P.2d 439].)

■ Rebecca concedes that the malicious prosecution action proceeded to a final judgment on the merits and that she was a party to that action. However, Rebecca asserts that the issues to be decided in this action are not identical to those adjudicated in the malicious prosecution action. She contends that the jury did not find that Rebecca's act of instituting criminal charges without probable cause was the sole proximate cause of the criminal charges being filed against Joseph. Such a conclusion, however, is not supported by the record in the malicious prosecution action. ■■■■ ■ The jury in the malicious prosecution action was instructed, in part, as follows: "If you find that the defendant, in good faith, sought the advice of an attorney before initiating the prosecution of the criminal action against plaintiff and made a full, fair and complete disclosure to him of all the pertinent and material facts of which the defendant had knowledge tending to prove or disprove the criminal charge and thereafter the

defendant acted upon the advice of the attorney and in the belief of plaintiff's guilt of the offense, then you must find that there was probable cause in initiating the prosecution of the criminal action against plaintiff."[5]

■■ The jury found in the malicious prosecution action that Rebecca did not honestly and reasonably believe in the truth of the charges leveled against Joseph and that *she did not act under advice of attorney Arnold*. These issues cannot, under the doctrine of collateral estoppel, be relitigated in this action. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d at p. 607.) ■ The proximate cause of Rebecca's being subjected to the malicious prosecution action and the damages which occurred to her as a result thereof, was her conduct and her conduct alone. The cause of action against Arnold must fail because of the lack of proximate causation between his conduct and the injuries Rebecca suffered.[6]

Given our conclusion that Rebecca was the sole proximate cause of the charges of child molestation being prosecuted against Joseph, and given the finding of the jury in the malicious prosecution case that the charges were false, the issue of whether Arnold's alleged hypnotism of the child was a proximate cause of the dismissal of the criminal charges is irrelevant. Regardless of the negligence involved, dismissal of criminal charges cannot serve as a basis for a malpractice action where the charges dismissed were false and the individual asserting both the criminal charges and the malpractice action knew the charges to be false when made.

We note that attorneys are often faced with a seemingly irresolvable dilemma of choosing between the perceived welfare of a child and the rights of its parents. When confronted with allegations of child molestation, a parent may establish several goals, all of equal value to the family involved. The parent may assert, as does Rebecca in her complaint, that her "immediate" concern is to exclude the alleged abuser from the family home in order to protect the child and to permit investigation of the charges. Often, the distraught family is adamant that it does not want the molester criminally prosecuted. Rather, the primary goal is often to protect the integrity of the family unit by dealing with the matter of sexual abuse of a child by seeking psychiatric care. ■ The state does not, however, view the area of sexu-

---

[5] Pursuant to Evidence Code Section 459, at the request of respondent, we take judicial notice of selected portions of the record in the malicious prosecution action, including the jury instruction quoted. A reviewing court may take judicial notice of matters which have not previously been judicially noticed and, thus, are not a part of the trial record. (*Terzian* v. *California Cas. Indem. Exch.* (1969) 3 Cal.App.3d 90, 96 [83 Cal.Rptr. 255].)

[6] Appellant's objections to this court taking judicial notice of matters which were not a part of the basis of the ruling of the trial court must be overruled. The ultimate concern of this court is the correctness of the trial court's ruling, regardless of the considerations which may have moved the trial court to its conclusion. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19-20 [112 Cal.Rptr. 786, 520 P.2d 10].)

al abuse of children in the same manner. Nor does it establish the same priorities. "In the area of sexual abuse of children by adults, the law . . . has three objectives: to punish the abuser, to identify and protect his victims and to cure him in order to protect future potential victims." (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 523 [194 Cal.Rptr. 431, 668 P.2d 738] (conc. and dis. opn. of Kaus, J.).) ■ Thus, an attorney's primary duty, when confronted with accusations such as those made by Rebecca against Joseph, is to act promptly to protect the child. We believe that an attorney can meet this responsibility by filing a petition for restraining orders, either in a dissolution action or under the DVPA. An attorney who files such a petition after being advised by his client that a third party, who is not a client of the attorney, has sexually abused a child, cannot be liable for any damages unless he does so with the knowledge that the facts contained within the petition are false. (Pen. Code, §§ 11166, subd. (d), 11172, subd. (a).)

■ Rebecca has apparently abandoned her appeal of the court's dismissal of her second cause of action entitled "Breach of Confidence and Trust and for the Establishment of a Constructive Trust." While Rebecca generally asserts that she has stated facts sufficient to support this "cause of action," she fails to provide legal argument or citation of authorities in support of her conclusion. Therefore, we treat the point as waived and pass it without consideration. (*Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].) ■ We note, however, that a constructive trust is but an equitable remedy available only to a plaintiff seeking recovery of specifically identifiable property. (*In re Marriage of Buford* (1984) 155 Cal.App.3d 74, 79 [202 Cal.Rptr. 20].) Because Rebecca has not alleged that she seeks recovery of "specific property," the court's ruling with respect to this cause of action must be allowed to stand.

The judgment is affirmed.

Compton, Acting P. J., and Gates, J., concurred.