[No. A043155. First Dist., Div. Two. May 25, 1990.]

BAKER PACIFIC CORPORATION, Plaintiff and Respondent, v. THOMAS M. SUTTLES et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IIA and IIB.

COUNSEL

McCartin & Wollett, Fritz Wollett, Martin M. Horowitz and Stephanie Rubinoff for Defendants and Appellants.

Allen, Matkins, Leck, Gamble & Mallory, Dwight L. Armstrong, Steven C. Ellingson and Patrick J. Grady for Plaintiff and Respondent.

OPINION

BENSON, J.—This action raises the questions of whether the trial court abused its discretion in denying a motion to set aside a default and whether a release form which an employer required to be signed by asbestos removal workers as a condition of employment violates public policy or is otherwise contrary to law. Finding that the trial court did not abuse its discretion in denying the motion to set aside the default, we shall nevertheless reverse the judgment because the release form tendered to the workers as condition of employment violated the statutory prohibition of Civil Code section 1668.

I

STATEMENT OF THE CASE

Baker Pacific Corporation is a licensed asbestos abatement and remediation contractor. Appellants, Thomas M. Suttles and Ralph Runckel, are two individuals who had been employed by Baker Pacific on various asbestos removal projects prior to October 1987. On October 26, 1987, Baker Pacific entered a contract with Metropolitan Life Insurance Company for the removal of asbestos from an office building owned by Metropolitan located at 425 Market Street, San Francisco, California. As an express condition pre- cedent to awarding the contract to Baker Pacific, Metropoli-

tan required Baker Pacific's employees to read and sign a written certificate of workers' release form.

Baker Pacific employs asbestos removal workers on a project-by-project basis as needed. Prior to October 26, 1987, appellants had been employed by Baker Pacific on asbestos removal projects. On October 26, 1987, appellants were on layoff status with Baker Pacific. During the last part of October 1987, Baker Pacific offered work to appellants on the Metropolitan job but appellants refused to sign the release claiming the release violated California and federal public policy. Metropolitan would not permit Baker Pacific to employ appellants for work in its building.

The release form provided that in consideration of appellants' employment by Baker Pacific and in consideration of the sum of one dollar, appellants would waive certain rights. Appellants were required to acknowledge they understood the dangers of working with asbestos and to warrant they have not been disabled by asbestosis or any other cancer disease. The portion of the release pertinent to this appeal reads as follows: "I knowingly assume *all risks* in connection with potential exposure of asbestos and I do hereby covenant not to sue, and to release and forever discharge Building Owner, Owner's Professional Consultant, independent testing laboratory or engineers employed by the Building Owner or Owner's Professional Consultant, and all of their directors, officers, employees, nominees, personal representatives, affiliates, successors, and assigns *for, from and against any and all liability whatsoever,* at common law or otherwise, except rights which the undersigned may have under the provision of the applicable workmen's [*sic*] compensation laws. Except as specifically set forth herein I hereby waiver [*sic*] and relinquish *any and all claims of every nature* which I now have or may have or claim to have which are in any way, directly or indirectly, related to exposure to asbestos and asbestos-containing materials." (Italics added.)

On May 11, 1988, the court entered a declaratory judgment holding that the release was valid.

A timely appeal followed.[1]

---

[1] The record discloses these parties have a separate action filed four months after this one and pending in the San Francisco Superior Court. (Action No. 892425; filed May 25, 1988.) In the action appellants have sued respondent and Metropolitan for damages and injunctive relief in causes of action for wrongful termination, breach of the covenant of good faith and fair dealing, tortious interference with contract, and intentional and negligent infliction of emotional distress.

## II

## DISCUSSION

A., B.\*

. . . . . . . . . . . . . . . . . . . .

### C. *Whether the Release Is Valid*

The trial court entered judgment declaring in relevant part that ". . . the Release is not void as against public policy or otherwise; and [that Baker Pacific's] compliance with Metropolitan's requirement that its employees execute the Release is not contrary to law . . . ." Appellants contend this decision is contrary to law in that it violates Civil Code sections 3513 and 1668[2] and because the terms of the agreement are unconscionable in an adhesion contract. In the trial court and on appeal, appellants rely on an opinion letter issued by the Legislative Counsel of California which found the release to be unenforceable. Appellants also read the release as waiving their rights against Baker Pacific in violation of sections 2801 and 2804 of the Labor Code.

Baker Pacific replies the release is not contrary to public policy since ". . . no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . ." (*Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].) Baker Pacific argues that in exchange for voluntarily signing the release, the employees obtained high-paying jobs while also retaining recourse for injuries against their employer and other potential third parties such as the manufacturer of protective equipment they wear. Baker Pacific asserts this situation is markedly different from that of the plaintiff in *Tunkl* who had no choice but to sign the hospital's release form in order to obtain necessary medical treatment.[3]

---

\* See footnote, *ante,* page 1148.

[2] Civil Code section 3513 provides: "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

[3] Respondent's patent effort to justify the validity of this release in all respects (including exculpation for fraud, wilful injury, or violation of law) contradicts our dissenting colleague's

Lastly, Baker Pacific points out that the release specifically excepts any rights the employees may have against their employer under the worker's compensation law and therefore it does not violate the provisions of the Labor Code which prohibit waiver of those rights.

■ "For it to be valid and enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be clear, unambiguous and explicit in expressing the intent of the parties. If a tortfeasor is to be released from such liability the language used 'must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.' " (*Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 598 [250 Cal.Rptr. 299], citation omitted.) "Whether a contract provision is clear and unambiguous is a question of law, not of fact." (*Ibid.*) ■ Our review of the release dictates the conclusion that the agreement is clear and unambiguous. It provides: the employees "knowingly assume all risks in connection with potential exposure of asbestos"; it releases Metropolitan "from and against any and all liability whatsoever, at common law or otherwise"; and it waives "any and all claims of every nature . . . related to exposure to asbestos." It is hard to imagine a clearer or broader release. There can be no doubt that this release includes a release of Metropolitan for its "own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent" as proscribed in Civil Code section 1668. Indeed, as we earlier noted, Baker Pacific does not argue the release should be read to exclude release of liability for conduct proscribed by Civil Code section 1668 as does our dissenting colleague. Baker Pacific asserts the release ". . . is precisely the type of 'private, voluntary transaction' contemplated by the *Tunkl* court, and the Release thus cannot be contrary to public policy."

■ "Traditionally, the law has looked carefully and with some skepticism at those who attempt to contract away their legal liability for the commission of torts. This general policy of the common law found legislative expression early in California history with the enactment of Civil Code section 1668. This section made it clear a party could not contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law. However, a contract exempting from liability for ordinary negligence is valid where no public interest is involved and where no statute expressly prohibits it. (*Gardner* v. *Downtown Porsche Audi* (1986) 180

---

observation that "This record does not reveal that the release presented to appellants was ever contended by respondent to include release of the acts proscribed by section 1668." (Dis. opn., *post*, p. 1158.) In fact, respondent, here and in the lower court, has never acknowledged any Civil Code section 1668 limitation on the scope of this release, nor disclaimed any intention to exclude fraud, wilful injury, or violation of law from its provisions.

Cal.App.3d 713, 716-717.)" (*Nunes Turfgrass, Inc.* v. *Vaughan-Jacklin Seed Co., Inc.* (1988) 200 Cal.App.3d 1518, 1534.)

 Here, the broad release clearly includes a release from liability for fraud and intentional acts and thus on its face violates the public policy as set forth in Civil Code section 1668. The trial court erred in determining the release was "not void as against public policy or otherwise."

Baker Pacific also maintains that even if the release were found to contravene public policy, its compliance with Metropolitan's requirement that its employees sign the release as a condition of employment would not be contrary to law since if the release were of no force or effect, then Baker Pacific's action would be of no force and effect and thus could not be contrary to law. We find this argument circular and unintelligible. Since we have determined the release as proffered is violative of Civil Code section 1668, it follows that requiring prospective employees to sign an illegal agreement as a condition of employment is contrary to law.

Our dissenting colleague, while seeming to acknowledge the language of the release sufficiently broad so as to exclude liability for fraud, wilful injury, and wilful or negligent violation of law, nevertheless argues the majority simply postulates ". . . the future possibility of a party to a liability release, pertaining to either past or future events (or a combination of both), attempting to seek its application illegally; i.e., to utilize it to bar his liability for fraud, willful injury, or violation of law because of the release's general language." (Dis. opn., *post*, p. 1159.) We do not see the case before us in that light.

Here, the damage is already done. Because two workers have refused to execute a written release of liability, the terms of which would necessarily include release of liability for fraud, wilful injury or violation of law (negligent or wilful), they have been denied an employment opportunity. In short, the release has already been applied illegally by conditioning employment on the execution of a contract containing terms violating the statutory law of this state.

The dissent would have us place an appellate court imprimatur on the declaratory judgment of the lower court because: (1) the language used in the release is common in virtually all releases; and (2) any effort by the judgment holder to use it illegally will predictably be rejected.

We are less sanguine than our colleague regarding the predictability of rejection. After all, the release has already been declared "not void as against public policy or otherwise." What is predictable, however, is

respondent's use of the declaratory judgment (if it were allowed to stand) as a defensive weapon to urge appellants are *collaterally estopped* from pursuing their damage claim in the pending San Francisco Superior Court action.

■ "The doctrine of collateral estoppel obviates the need to relitigate issues on a second action already adjudicated in the first action. [Citation.] There are three prerequisites which must be shown before the doctrine will be applied: (1) the issue in the second action must be identical to the issue adjudicated in the first action; (2) the first action must have proceeded to a final judgment on the merits; and (3) the party against whom the collateral estoppel is to be asserted must have been a party, or in privity with a party, to the first action. [Citation.]" (*Tushinsky* v. *Arnold* (1987) 195 Cal.App.3d 666, 672 [241 Cal.Rptr. 103].)

It is not our province to offer a prediction as to whether an asserted collateral estoppel defense would succeed or fail. (We would feel more comfortable in predicting another appeal if the trial court were required to decide the issue.) However, it is obvious to the majority that these workers will be put to the burden, expense and risk of overcoming an issue they should not have to meet. We see an essential unfairness inherent in the position taken by the dissent. The issue bears significantly on the relative sophistication and bargaining strength of the parties to the proposed release. The workers are given the choice of adhering to its terms or foregoing gainful employment. The employer, rather than amending the release to meet the legitimate policy concerns expressed by the workers (a matter readily accomplished by excepting the provisions of Civil Code section 1668 from the terms of the release), simply refused to hire these presumably otherwise qualified workers.

This "pistol to the head" approach to an employment relationship, where hiring is conditioned on acceptance of statutorily proscribed terms, is not acceptable to us. Moreover, it has potential for bringing serious mischief to the work place. We cannot expect workers generally to be cognizant of judicial decisions concerning the interpretation of exculpatory provisions within releases. We reject the concept that a worker, compelled by economic necessity to secure employment, can be thus coerced into signing sweeping agreements exculpating various responsible entities from *all* aspects of tort liability in the uninformed hope the agreement will not be enforced by the courts. We foresee situations where the uninformed releasing employee will forego legitimate claims rather than assume the risk of expensive, time-consuming litigation for an uncertain result.

Our research has not produced a reported case where, as here, the validity of the release language under section 1668 is tested in a declaratory relief

action *prior* to the parties' acceptance of the release language and their entry into the underlying transaction. In that significant respect the cases relied on by our dissenting colleague are materially distinguished by the case we are called upon to decide. *Werner* v. *Knoll* (1948) 89 Cal.App.2d 474 [201 P.2d 45], *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333 [214 Cal.Rptr. 194], and *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589 [250 Cal.Rptr. 299], each involve a situation where the exculpatory language is subjected to judicial review in litigation arising *after* the complaining party has signed and accepted the release, entered into the underlying transaction or service contemplated in the contract, injury is suffered and a suit for damages is brought against the releasee. The exculpatory language is then raised as an affirmative defense, and the issue is resolved in summary proceeding or bifurcated trial.

We have no quarrel with the holdings in these cases cited by the dissent. *Werner, Hulsey,* and *Madison* simply stand for the proposition that where a plaintiff/releasor has knowingly and willingly contracted to exculpate the defendant releasee from liability, accepts the benefits of the agreement, and then sues the releasee on causes of action not statutorily proscribed by Civil Code section 1668 (i.e., negligence, warranty, strict liability), the releasor will not be permitted to avoid his agreement on public policy grounds by urging that statutorily proscribed actions, *irrelevant to the actions pursued by the releasor,* can be inferred as included within the broad exculpatory language of the agreement.

The dissent's reliance on *Palmquist* v. *Mercer* (1954) 43 Cal.2d 92 [272 P.2d 26], also misses the mark. As in *Werner, Hulsey,* and *Madison,* the *Palmquist* release had been signed and accepted by plaintiff releasor who then entered the transaction (renting a horse for a ride), sustained injury, and sued the riding academy/releasee. The trial court granted a judgment of nonsuit based on the release which purported to release the academy from all liability including liability for its own fraud. The Supreme Court reversed, finding the record contained ample evidence to sustain liability for fraud and this issue should have been left for the jury. *Werner, Hulsey, Madison,* and *Palmquist* are inapposite. The cases do not remotely approach the problem before us where the trial court, apparently responding to respondent's argument that its release is a "private, voluntary transaction" without public policy implications, condones the required execution of the release as a condition of employment by judicially declaring the release "not void as against public policy."

The dissent also refers to "1 West's California Civil Code Forms (3d ed. 1989) Obligations, section 1541, form 3, page 573" (dis. opn., *post*, p. 1158, fn. 2) as further evidence that "[t]he 'all' and 'any and all' language of this

release is common to virtually every form release contemporarily and heretofore used by practitioners." We do not quarrel with this generalization but merely point out that this form of release, and all of the forms cited under Civil Code section 1541, are expressly designed for the settlement of cases between parties in litigation. The settlement language of the release is intended to be appropriate only at the conclusion of an adversarial relationship as an accord and satisfaction of the dispute. In short, the release is designed to prevent relitigation or collateral attack upon a cause of action arising from a *past* event. The rationale behind this policy of repose is not germane to the situation before this court.

In summary, we reject the notion advanced by the dissent that our opinion contradicts settled law or that we do damage to time honored forms of release. We do neither. We hold, in the context of this declaratory relief action, a release containing terms violative of Civil Code section 1668 and tendered to prospective employees as a condition of employment is void as against public policy.

### III

### DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to enter a judgment declaring the release void. Appellants are awarded their costs on appeal.

Smith, Acting P. J., concurred.

**PETERSON, J.**—I respectfully dissent.

I do not find as does the majority that the form of the questioned release "*on its face* violates the public policy as set forth in Civil Code[1] section 1668"; or that "[b]ecause two workers have refused to execute a written release of liability, the terms of which would *necessarily include release of liability for fraud, wilful injury or violation of law* (negligent or wilful), they have been denied an employment opportunity." (Maj. opn., *ante*, p. 1154, italics added.)

The pertinent language of the release running to Metropolitan and its agents and officers consists of the releasing party "knowingly assum[ing] *all* risks in connection with potential exposure [to] asbestos," releasing them "from and against *any and all* liability whatsoever," and waiving "*any and*

---

[1] All subsequent statutory references are to the Civil Code.

*all* claims of every nature . . . related to exposure to asbestos . . . ." (Italics added.) This language is said to be broad enough to encompass release of liability claims for fraud or willful injury or violation of law, thereby invalidating the release because of the proscription of sections 1668 and 3513.

This record does not reveal that the release presented to appellants was ever contended by respondent to include release of the acts proscribed by section 1668. Appellants themselves put this interpretation on the release through their counsel's communication to their employer, by which they refused to execute it and, thus, unilaterally created a straw man; i.e., a release valid on its face which they allege violated public policy in that it would nonetheless discharge claims whose release is legally proscribed by section 1668. Respondent then sought a declaratory judgment that the release was not void as against public policy. The lower court's declaratory judgment as here pertinent held "the Release is not void as against public policy or otherwise . . . ."

The majority has accepted appellants' interpretation of the release, apparently rationalizing its decision in part on the fact that respondent did not specifically allay appellants' ostensible fears over the alleged effect of the release, or deny or respond to appellants' patently erroneous contentions regarding its effect.

It initially seems clear that the release did not, and could not, become invalid merely because respondent chose to ignore appellants' contentions as to its effect. As will be later explained, those contentions regarding the interpretation of the release language were more than simply erroneous; they were proscribed as a matter of law.

I cannot, therefore, as the majority suggests, convert respondent's failure to respond to such contentions of appellants to a "patent effort to justify the validity of this release in all respects (including exculpation for fraud, wilful injury, or violation of law) . . . ." (Maj. opn., *ante*, p. 1152, fn. 3.)

The unilateral contention of one contracting party to another that a contract valid on its face is nonetheless illegal does not establish such illegality; neither does the failure to respond to such contention.

The "all" and "any and all" language of this release is common to virtually every form release contemporarily and heretofore used by practi-

tioners.[2] An analysis of the operative words of this release similar to that of the majority could arguably be made as to almost any current form of release.

The majority suggests that the settlement language of the release at bar and of those described in footnote 2 to this dissent, *ante,* are "designed to prevent relitigation or collateral attack upon a cause of action arising from a *past* event"; and hence, that "[t]he rationale behind this policy of repose is not germane to the situation before this court." (Maj. opn., *ante,* p. 1157, italics in original.)

One needs to look no further than *Palmquist* v. *Mercer* (1954) 43 Cal.2d 92 [272 P.2d 26] to determine the Supreme Court has recognized that a release concerning, as here, liability of the releasee for a *future* event (a prospective ride to be undertaken on a horse at a riding academy) is subject to the same rules of construction in the application of section 1668 as is a release pertaining to a *past* event. In *neither* case can such language *as a matter of law* include release of liability for acts, release of which is proscribed by section 1668. Further, I see no distinction in the application of rules of precedent to the analysis of a contract's meaning, as the majority suggests, because of the procedural vehicle utilized to obtain a judgment thereon, whether declaratory relief or otherwise. The applicability of section 1668 and its incorporation by law into all contracts of release remains constant, regardless of whether the cause of action concerning that applicability is one which exists and is sued upon *before,* or may arise and be sued upon *after,* the release is executed.

The majority's arguments to the contrary simply postulate the future possibility of a party to a liability release, pertaining to either past or future events (or a combination of both), attempting to seek its application illegally; i.e., to utilize it to bar his liability for fraud, willful injury, or violation of law because of the release's general language. That application is absolutely proscribed by section 1668, and any such future contention of the party released would predictably be rejected as a matter of law. "Ordinarily, *all applicable laws* in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, *necessarily enter into the contract and form a part of it,* without any stipulation to that effect, as if they were expressly referred to and incorporated. [Citation.]" (*City of Torrance* v. *Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 378 [185

---

[2] See 1 West's California Civil Code Forms (3d ed. 1989) Obligations, section 1541, form 3, page 573, where the recommended general release typically provides, inter alia, for release "of and from all claims . . . of whatever kind or nature . . . relating to any matter whatsoever . . . ."

Cal.Rptr. 645, 650 P.2d 1162], internal quotation marks omitted, italics added.)

Even if one assumes, arguendo, that respondent had affirmatively sought a construction of the release contrary to the proscription of section 1668 (an assumption the record belies), this long-standing rule applying to all contracts, including the release at bar, is not subject to variation simply because a party thereto urges it be given an erroneous construction. Many lawsuits involve, as does this one, simply a disputed question of the legal meaning of a contract's literal terms without the necessity of considering any additional evidence on that question. An erroneous and rejected assertion of a litigating party as to what the language of a contract means does not, ipso facto, invalidate the contract.

In *Werner* v. *Knoll* (1948) 89 Cal.App.2d 474 [201 P.2d 45], a contention similar to that of appellants was made in a lease providing: " 'First party [defendant] shall not be liable for any damage arising from personal injuries sustained by any person or persons, in, on, or about said premises, *from any cause whatsoever,* and second party [plaintiff] agrees to save and keep first party free and harmless of and from *any such* liability, loss or damage.' " (P. 475, italics added, brackets in original.)

The *Werner* court said: "[S]ection 1668 does not declare unlawful *all* contracts, the object of which is to exempt individuals from the consequence of their own acts, but *only* those contracts which would exempt one from the consequences of his own fraud, willful injury or violation of law whether willful or negligent." (89 Cal.App.2d at pp. 475-476, italics added.)

Appellant in *Werner* contended (as do appellants here), inter alia, "that inasmuch as the provision in question purports to relieve respondent from liability arising from *any cause* it therefore attempts to relieve respondent from the consequences of his own fraud and willful injury as well as negligence contrary to the provisions of Civil Code section 1668 thereby rendering the entire provision invalid with the result that respondent cannot rely upon the provision to relieve him from the consequences of his own negligence." (89 Cal.App.2d at p. 476, italics added.)

Pointing out that the pleadings in *Werner* only raised the question of respondent's negligence, Justice Peek concluded: "The asserted illegality of the provisions relating to fraud and willful injury would *not* deprive respondent of relying upon the provision relating to negligence since *the rule is well established that a lawful promise based on a good consideration is not invalid because an unlawful promise is made for the same consideration* [citation] *and there is no reason to reach a different conclusion where the*

*provisions relating to fraud, willful injury, and negligence are not separately stated but are included within the single phrase 'any cause.'"* (89 Cal.App.2d at p. 477, italics added.)

The *form* of the release at bar, per se, is not void as violative of the public policy enunciated by section 1668 because it was valid for the purpose of relieving Metropolitan of liability for acts of ordinary negligence and strict liability; and it was required to be interpreted as incorporating section 1668 eliminating from its effect any discharge of liability of the released party for fraud, willful injury, or violation of law.

*Palmquist* v. *Mercer, supra,* was a case in which a general release, given a riding academy in advance of his ride by a plaintiff injured when riding a rented horse of known dangerous propensities, was urged by the academy to bar plaintiff's claim grounded in actual fraud for failure to disclose material facts concerning those unsafe and dangerous propensities. *Palmquist* observed that *Werner, supra,* 89 Cal.App.2d 474, had recognized "'contracts seeking to relieve individuals from the results of their own negligence are not invalid . . . .'" (43 Cal.2d at p. 100.) The *Palmquist* court held, however, that such a release was ineffective "to exempt one from liability 'for his own fraud,'" and that the trial court erred in withdrawing that issue from the jury based on the release. *(Ibid.)*

Here, and in *Werner,* the release remains a valid bar to claims arising from negligence and strict liability of the parties released, even if an erroneous contention is made that it includes claims whose release is legally proscribed by section 1688. *Palmquist, supra,* simply reinforces *Werner* by affirming that, despite contrary contentions, the typical language of a general release of civil liability claims cannot be applied to bar claims for fraud because of the proscription of section 1668.

The release in this case, as it must be interpreted under the law of this state, excludes from its ambit any bar of claims arising from fraud, willful injury, or violation of law. Measured by such interpretation, the release was, as the trial court found, "not void as against public policy or otherwise . . . ."

The majority's conclusion as to the invalidity of the release also appears to run counter to that of two other decisions, which refused to hold section 1668 would invalidate similar releases of all claims in connection with other activities which, like asbestos removal, pose obvious hazards to participants. In *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333 [214 Cal.Rptr. 194], the court dealt with a release which purported to cover "'all actions, claims or demands . . . .'" (P. 340.) The court affirmed summary

judgment based upon the release of claims sounding in negligence and strict liability: "Whatever it proscribes, this section [1668] does *not* invalidate contracts which seek to except one from liability for simple negligence or strict liability." (*Id.* at p. 342, italics in original.)

Similarly, in *Madison v. Superior Court* (1988) 203 Cal.App.3d 589 [250 Cal.Rptr. 299], the court dealt with a release which purported to cover " 'any and all actions or causes of action . . . .' " (P. 594.) The court rejected a claim that section 1668 invalidated the release: "Therefore, we conclude that the agreement is enforceable and, as against any action brought by [the injured party], would have served as *'a complete defense.'* It had the obviously intended legal effect of shifting the responsibility for any negligence by the defendants . . . . By this agreement, [the injured party] effectively assumed all of the risks of any injury he might suffer as a result of defendants' negligence during the training course." (*Id.* at p. 600, italics in original.)

The majority suggests I "acknowledge the language of the release [is] sufficiently broad so as to exclude liability for fraud, wilful injury, and wilful or negligent violation of law . . . ." (Maj. opn., *ante*, p. 1154.) To the contrary, I assert that, regardless of any such hypothetical construction which might arguably be placed on the literal language of the release, the mandatory and necessary inclusion of the proscriptive terms of section 1668 in the release by operation of law totally precludes that construction. Indeed, it is for this reason I find the trial court should be affirmed.

The majority's result, having been reached, in my view, by an erroneous interpretation of the release, is further rationalized by the alleged denial of an "employment opportunity" to appellants (maj. opn., *ante*, p. 1154), who chose through counsel to place an interpretation on the release the law forbids and to refuse employment for that sole reason.

The record discloses these parties have a separate action, filed four months after this one and waiting in the wings in the Superior Court of the City and County of San Francisco,[3] wherein appellants have sued respondent and Metropolitan for damages and injunctive relief in causes of action for wrongful termination, breach of the covenant of good faith and fair dealing, tortious interference with contract, and intentional and negligent infliction of emotional distress.

While applicable precedent requires us to find the release to be valid as one barring claims for negligence and strict liability, that finding will not

---

[3] San Francisco Superior Court No. 892425, filed May 25, 1988.

preclude appellants from proceeding with their pending San Francisco action. There they may offer proof, if available, that respondent at the behest of Metropolitan *in fact* discharged them for refusing to release claims of liability for fraud, willful injury, or statutory violation, even though the release presented to them could not be legally interpreted to bar such claims.

I do not believe we can here vary the clear and ordinary rules of construction of contracts because, as the majority suggests, the declaratory judgment might be urged collaterally to estop this separate damage action of appellants, or potentially create additional "burden, expense and risk" for them in that action. (Maj. opn., *ante*, p. 1155.) I find no authorities approving such speculations as a rationale dictating or affecting the construction of the contract's meaning in the case at bar.

The majority seems to implicitly conclude that, had the employer amended the release to *except literally and specifically* from its effect the terms of section 1668, such clarification and its express confirmation in the summary judgment would have compelled the result I reach. This conclusion is buttressed, it is contended, by comparison of the "relative sophistication and bargaining strength of the parties to the proposed release"; i.e., because the employer chose not "to meet the legitimate policy concerns" of the employees by so amending the release, reversal is compelled. (Maj. opn., *ante*, p. 1155.)

This reasoning, I respectfully submit, posits without precedent a strange and murky doctrine in contract analysis. It means this: A release, to avoid invalidation on the public policy grounds the majority asserts, must *literally* set forth and exclude from its effects acts already so excluded by operation of law because of the proscription of section 1668, if the releasor lacks the "sophistication" or "bargaining strength" of the releasee, and arguably cannot therefore be deemed to understand the principle of incorporation of section 1668 in, and its legal effect on, all releases in this state.

Carried to its logical extension, such reasoning would compel similar revision of all contracts to include literally all relevant portions of the Civil Code of this state, affecting that contract and now deemed incorporated therein. The test of the parties' relative "sophistication" as a trigger of that result would remain a subject of repeated factual dispute in each case. Traditional rules of contract interpretation, incorporating applicable statutes therein as a matter of law, would be effectively abolished. The question of whether a relevant statute is incorporated by law in a contract of release would become uncertain at best, unknown at worst. If from case to case the relative "sophistication" and business acumen of releasors and releasees varies, literal inclusion of the relevant statute would be required at the peril

and risk of the release being found invalid. No incorporation by law of the terms of a statute in a release could be safely assumed by any drafting lawyer under these circumstances; and the complexity of, and litigation concerning, legal draftsmanship and the legal effect of releases would thereby be sharply and unnecessarily heightened.

No authorities to date hold that the ancient principle of incorporation by law of a relevant and applicable statute in a contract in this state is invalidated unless that statute is expressly set forth therein, when some relative disparity of sophistication and bargaining strength of the contracting parties exists. The majority's result does just that.

I would hold, in affirming the judgment, that the release was not void as violating public policy, because it legally barred claims of negligence and strict liability.

A petition for a rehearing was denied June 22, 1990, and respondent's petition for review by the Supreme Court was denied August 30, 1990.