[No. B139673. Second Dist., Div. Three. Dec. 21, 2000.]

RICHARD D'SA, Plaintiff and Appellant, v.
PLAYHUT, INC., et al., Defendants and Respondents.

## COUNSEL

Michael J. Faber for Plaintiff and Appellant.

Hewitt & Prout, Henry C. Truszkowski and Stephen L. Hewitt for Defendants and Respondents.

## OPINION

**CROSKEY, J.**—Plaintiff, Richard D'Sa (plaintiff) appeals from a summary judgment entered in favor of defendants Playhut, Inc. and Worldtec Group International (Playhut, Worldtec, collectively defendants).[1] Plaintiff sued defendants for wrongful termination, alleging defendants violated public policy when they fired him because he refused to sign a "confidentiality agreement" that contained an illegal covenant not to compete. The trial court granted defendants a summary judgment because it determined the covenant not to compete was "within a broader employment contract including 'choice of law' and 'severability' provisions [and therefore] does not violate the public policy of the State of California."

Plaintiff contends the fact that the covenant not to compete was severable from the other provisions of the confidentiality agreement does not make defendants' firing of him lawful. We agree. We hold an employer cannot lawfully make the signing of an employment agreement, which contains an unenforceable covenant not to compete, a condition of continued employment, even if such agreement contains choice of law or severability provisions which would enable the employer to enforce the other provisions of the employment agreement. We further hold that an employer's termination of an employee who refuses to sign such an agreement constitutes a wrongful termination in violation of public policy.

---

[1]According to the appellate record, defendant Playhut develops, markets and distributes toys, and defendant Worldtec provides human resources, payroll and other administrative services to Playhut.

## Background of the Case

### 1. *Procedural Background*

Plaintiff's complaint, filed in March 1999, alleges defendants hired him pursuant to an oral contract of employment for an indefinite term. Thereafter, defendants presented plaintiff with an employee confidentiality agreement, and when he refused to sign it within a specified period of time, he was summarily dismissed from his employment.[2] The complaint alleges the dismissal was in violation of fundamental public policy, and it cites Business and Professions Code section 16600.[3]

Defendants filed a general denial to the complaint and alleged 30 affirmative defenses. Plaintiff moved for summary adjudication on the issue whether defendants had a defense to his cause of action for wrongful termination. The motion was denied. Thereafter defendants moved for summary judgment, which was granted. This timely appeal followed.

### 2. *Provisions of the Employee Confidentiality Agreement*

The employee confidentiality agreement contains provisions that address an employee's responsibilities, and defendants' rights, respecting the nondisclosure of defendants' trade secrets and the transfer to defendants of inventions and patents that the employee may make or obtain during his employment. Additionally, the confidentiality agreement contains the following provision restricting an employee's competition with defendants (referred to herein as the covenant not to compete): "Employee will not render services, directly or indirectly, for a period of one year after separation of employment with Playhut, Inc. to any person or entity in connection with any Competing Product. A 'Competing Product' shall mean any products, processes or services of any person or entity other than Playhut, Inc. in existence or under development, which are substantially the same, may be substituted for, or applied to substantially that same end use as the products, processes or services with which I work during the time of my employment with Playhut, Inc. or about which I work during the time of my employment with Playhut Inc. or about which I acquire Confidential Information through my work with Playhut, Inc. Employee agrees that, upon accepting employment with any organization in competition with the Company or its affiliates

---

[2]Apparently all of Playhut's employees were given the confidentiality agreement to sign and return. Defendants acknowledge in their appellate brief that plaintiff was fired after he refused to sign and return the agreement.

[3]Business and Professions Code section 16600 (section 16600) states that except in instances not relevant here, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

during a period of five year(s) following employment separation, Employee shall notify the Company in writing within thirty days of the name and address of such new employer."

The confidentiality agreement contains choice of law and severability provisions, to wit: "It is agreed that this agreement will be interpreted and construed according to the laws of the state where the Company is located. Should any portion of this agreement be judicially held to be invalid, unenforceable or void, then such holding shall not invalidate the remainder of this agreement or any other part thereof."

Additionally, the confidentiality agreement states that the employee is agreeing to the terms of the agreement "[i]n consideration of my employment, continued employment, promotion, increases in compensation and/or other benefits now or hereafter paid or made available by the Company," and the agreement contains a provision that makes it retroactive to the date plaintiff was hired: "The above agreement . . . covers work performed protected [*sic*] under this agreement since date of hire at Playhut, Inc."

## ISSUE ON APPEAL

If an employment agreement contains an illegal covenant not to compete but also contains choice of law or severability provisions which would enable an employer to enforce the provisions of the agreement that are not prohibited by section 16600, can the employer lawfully condition an employee's continued employment on his signing the agreement, or does a firing of an employee for his refusal to sign the employment agreement give rise to a tort cause of action for public policy wrongful discharge?

## DISCUSSION

### 1. *Introduction*

Clearly, the very broad covenant not to compete that is contained in the subject confidentiality agreement in this case comes, at least in part and perhaps entirely, within the prohibitory provisions of section 16600 and is therefore to that extent void and unenforceable. However, whether defendants could enforce any part of this noncompetition clause if plaintiff had signed and returned the agreement in a timely manner, continued in his employment, and later left that employment, is not an issue in this appeal. The issue is whether defendants can make plaintiff's acceptance of the agreement a condition of his continued employment by firing him when he refused to sign it. We hold they cannot. California law would protect

plaintiff if defendants sought to overreach by trying enforce the covenant not to compete, and California the law will also protect him from a termination of his employment brought on by his refusal to sign an agreement containing the illegal covenant.

### 2. *Public Policy Wrongful Discharge Suits*

Plaintiff alleged in his complaint that under his employment agreement with defendants, they could only discharge him for good cause. Defendants alleged in their answer that plaintiff was an at-will employee. Which of these assertions is correct is not a factor in this appeal because while an employer has the right to discharge an at-will employee for a good reason, for no reason, or even for an arbitrary or irrational reason, such an employee may not be terminated "for an unlawful reason or a purpose that contravenes fundamental public policy." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1094 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*), overruled on another point in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) ■ Employees have a tort cause of action against employers who fire them "for performing an act that public policy would encourage, or for refusing to do something that public policy would condemn." (*Gantt, supra,* at p. 1090.) "When such a termination occurs, the nature of the employee's relationship with the employer, whether at will or contractual, is essentially irrelevant. What is vindicated through the cause of action is not the terms or promises arising out of the particular employment relationship involved, but rather the public interest in not permitting employers to impose as a condition of employment a requirement that an employee act in a manner contrary to fundamental public policy." (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 667, fn. 7 [254 Cal.Rptr. 211, 765 P.2d 373].)

"The public policy must involve a subject which affects the public at large rather than a purely personal or proprietary interest of the plaintiff or employer. The policy must also be fundamental, substantial and well established at the time of discharge." (*Parada v. City of Colton* (1994) 24 Cal.App.4th 356, 363 [29 Cal.Rptr.2d 309], citing *Gantt.*) "[C]ourts in wrongful discharge actions may not declare public policy without a basis in either constitutional or statutory provisions. A public policy exception [to the general at-will employment termination rules] carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public. The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are

protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded." (*Gantt, supra*, 1 Cal.4th at p. 1095, italics omitted.) In addition to statutes and constitutional provisions, valid administrative regulations may also serve as a source of fundamental public policy that impacts on an employer's right to discharge employees when such regulations implement fundamental public policy found in their enabling statutes. (*Green v. Ralee Engineering Co., supra*, 19 Cal.4th at pp. 71, 79-82.)

■ In the instant case, there exists a clear legislative declaration of public policy against covenants not to compete. "[Section 16600] represents a strong public policy of this state [citations]." (*KGB, Inc. v. Giannoulas* (1980) 104 Cal.App.3d 844, 848 [164 Cal.Rptr. 571].) "California courts have consistently declared [section 16600] an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859 [27 Cal.Rptr.2d 573].) "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." (*Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 255 [67 Cal.Rptr. 19].) This public policy against covenants not to compete legitimately forms the basis of plaintiff's cause of action for wrongful termination in violation of public policy.

*Baker Pacific Corp. v. Suttles* (1990) 220 Cal.App.3d 1148 [269 Cal.Rptr. 709], a declaratory relief action brought by an employer, involved a situation analogous to the one presented in this case. In *Baker*, asbestos removal workers were required to sign a release form as a condition of employment, and the workers who refused to sign the release were denied employment. The *Baker* court determined the release form violated the public policy set forth in Civil Code section 1668. (220 Cal.App.3d at p. 1154.)[4] The court held that since the release violated public policy, it necessarily followed that requiring prospective workers to sign the release as a condition of employment was contrary to law. (220 Cal.App.3d at p. 1154.)

In so holding, the *Baker* court rejected the employer's argument that since the release was invalid and could therefore have no force or effect, the

---

[4]Civil Code section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." The release form in *Baker Pacific Corp.* was broadly written so as to include a release of liability for both actions proscribed by section 1668 and for ordinary negligence.

employer's actions in requiring the employees to sign it as a condition of employment could also have no force or effect and therefore could not be contrary to law. The court called this argument "circular and unintelligible." In the instant case, defendants make a similar argument. They assert that because the confidentiality agreement has choice of law and severability provisions, the agreement "could not be construed against [plaintiff] in a manner which violates the public policy of section 16600," and therefore there is no connection between section 16600's public policy and defendants' conduct. Thus, their argument goes, plaintiff can have no wrongful termination suit based on violation of California public policy.

Like the *Baker* court, we find such reasoning unavailing. It is clear that the severability clause exists for the benefit of Playhut, not Playhut's employees. It is there to help defendants enforce the provisions of the agreement that are valid. It serves no purpose on behalf of plaintiff. Moreover, as discussed below, it is not likely that Playhut's employees are sufficiently versed in California's law of contracts such that they would know (1) that the covenant not to compete is invalid and therefore not enforceable by Playhut and (2) that they could sign the agreement without fear they would be bound by the covenant not to compete. Thus, the severability and choice of law provisions do not provide support for the summary judgment granted to defendants.

3. *Defendants'. Request for a Special Construction of the Covenant Not to Compete*

■ "[Section 16600] invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment or imposing a penalty if he does so [citations], unless they are necessary to protect the employer's trade secrets [citation]." (*Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147, 18 A.L.R.3d 1241].) Defendants assert that the summary judgment granted them by the trial court can be affirmed if only we will construe the covenant not to compete as a "narrow restraint" "against the disclosure of trade secrets and other confidential information." Defendants base their position on certain rules of appellate review: (1) if a judgment is "correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court" then it will be affirmed if "there is no genuine issue of material fact" (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698]), and (2) the reviewing court independently interprets a written instrument if the trial court's interpretation of such instrument is not based on conflicting extrinsic evidence (*Rollins v. Stokes* (1981) 123 Cal.App.3d 701, 709 [176 Cal.Rptr. 835]).

While it is true that a covenant not to compete will not be viewed as a violation of section 16600 if it is "necessary to protect the employer's trade secrets" (*Muggill v. Reuben H. Donnelley Corp.*, *supra*, 62 Cal.2d at p. 242), and while it is true that employers have the right to protect proprietary and property rights which are subject to protection under the law of unfair competition (*Metro Traffic Control, Inc. v. Shadow Traffic Network*, *supra*, 22 Cal.App.4th at p. 861), we do not perceive the intended purpose of the instant covenant not to compete to be the protection of Playhut's property, trade secrets, and other proprietary information since (1) it is the other provisions of the agreement that are meant to provide such protection, and (2) the covenant not to compete only places a one-year limitation on plaintiff's activities whereas these other provisions are not so limited. Moreover, the covenant not to compete simply does not lend itself to the construction defendants assert. Therefore, we would be acting outside the norm if we construed the provision as defendants wish. We would not be reforming the contract based on a mistake of the parties; rather we would be saving a statutorily proscribed and void provision. (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407-408 [75 Cal.Rptr.2d 257].)

Further, even if we could construe the covenant not to compete as a trade secret provision, it is not likely that the average employee of Playhut would so interpret it, given the language utilized in the provision and the presence of the above mentioned provisions, which are clearly meant to provide trade secret protection. Therefore, if we were to agree to the construction defendants ask for, we would undermine the protection given to employees in section 16600, since many, if not most, employees would likely interpret the provision as a covenant not to compete, and might act according to their interpretation rather than consult an attorney to find out if their interpretation is correct. (*Kolani v. Gluska*, *supra*, 64 Cal.App.4th at p. 408.) We quote from *Baker Pacific Corp. v. Suttles*, *supra*, 220 Cal.App.3d at page 1155: "[A]n employment relationship, where hiring is conditioned on acceptance of statutorily proscribed terms, is not acceptable to us. Moreover, it has potential for bringing serious mischief to the work place. We cannot expect workers generally to be cognizant of [their section 16600 rights]. We reject the concept that a worker, compelled by economic necessity to secure employment, can be thus coerced into signing sweeping agreements [to not compete with their employers upon leaving the employment] in the uninformed hope the agreement will not be enforced by the courts. We foresee situations where the uninformed . . . employee will forego legitimate [employment] rather than assume the risk of expensive, time-consuming litigation [by the former employer]."

## DISPOSITION

The summary judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Costs on appeal to plaintiff.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied January 8, 2001, and respondents' petition for review by the Supreme Court was denied March 21, 2001.