[No. B007790. Second Dist., Div. Two. Feb. 22, 1985.]

EDWARD MARTIKIAN, Plaintiff and Respondent, v.
KYONG WAN HONG, Defendant and Appellant.

**COUNSEL**

Joseph Choate, Jr., and Choate & Choate for Defendant and Appellant.

Gerard L. Friend for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—Appellant Kyong Wan Hong (Hong) determined to do business in a small shopping center as the Glendale House of Liquor and Deli. Respondent Edward Martikian (Martikian) operated Edna's Coffee Shop in the same shopping center. On June 3, 1983, Hong went to Martikian's place of business, accompanied by his broker and by the shopping center landlord, for the purpose of entering into an agreement with Martikian to the effect that Hong would sell no middle eastern grocery items in his store if Martikian would sell no beer or wine in his. Martikian was willing to make such a contract and the same was then drafted by Hong's broker and executed by the parties.

On August 1, 1983, Hong took possession of the premises designated for his establishment under a five-year lease which, inter alia, provided that: [Section 2] "Lessee is leasing the premises and will use and manage said premises *exclusively for operating and conducting thereon a liquor store.* Lessee agrees not to use or permit the premises to be used for any other business or purpose without first obtaining the written consent of Lessor." (Italics added.)

[Section 35] "So long as Leasee (*sic*) is not in default in the performance of any of the terms and conditions of this Lease, Lessor will not rent or lease or permit the occupation by himself or another of any portion of the shopping center of which said premises are a part, for a business of a type specified in section 2 of this Lease."

After commencing to operate his business, Hong began to sell middle eastern products. Having filed suit for specific performance of the June 3 agreement, Martikian sought and obtained a preliminary injunction enjoining Hong from making such sales. When Hong ignored the injunction, Martikian obtained an order to show cause re contempt and Hong was fined for his conduct. Being by then of the conviction the agreement was invalid as an illegal restraint of trade, Hong did not pay the fine and continued to ignore the injunction.

At the hearing on a second contempt order and in the light of Hong's apparent intransigence toward the subject, the trial court suggested, and there ensued with the consent of both sides, arbitration proceedings which resulted in a decision in favor of Martikian. Still dissatisfied, Hong persisted

in selling the contested products and brought a motion to dissolve the injunction, on the ground the agreement from which it emanated was unlawful. That motion was denied; this appeal followed. We affirm.

 No discussion is required in positing the established propositions that certain kinds of restraints of trade uniformly have been condemned both by the common law (see *United States* v. *Addyston Pipe & Steel Co.* (6th Cir. 1898) 85 Fed. 271) and by federal and state statutes (see 15 U.S.C. § 1; Bus. & Prof. Code, §§ 16600, 16720, 16722), and that the agreements which created them have been declared both illegal and void. In general, however, and in the absence of circumstances where practices of restraint are particularly pernicious (see *Northern Pac.R. Co.* v. *United States* (1958) 356 U.S. 1, 5 [2 L.Ed.2d 545, 549, 78 S.Ct. 514]), only those restraints which *unduly* or *unreasonably* interfere with trade and commerce have been subject to this condemnation, such that from earliest times there has been developed a "rule of reason" whereby any given restraint is to be tested as lawful or unlawful. (See *Standard Oil Co.* v. *United States* (1911) 221 U.S. 1 [55 L.Ed. 619, 31 S.Ct. 502].) That rule, as accepted and applied in this state, has been expressed in the principle that "[I]f the public welfare be not involved and the restraint upon one party be not greater than protection to the other requires, the contract will be sustained although it in some degree may be said to restrain trade." (*Great Western etc.* v. *J. A. Wathen D. Co.* (1937) 10 Cal.2d 442, 448-449 [74 P.2d 745].) Here, in the language of the arbitrator assigned to the matter, which we adopt as our own,[1] "The agreement has a trival non-competitive effect. The public welfare is not involved and the restraint on each party is not greater than is required to protect the other party. . . . The agreement was not directed at price. It did not affect the public's right to acquire the products involved at competitive prices. The evils to which the statutory and common law principles against unreasonable restraints are directed do not here apply.

"The action complained of is not illegal per se and the 'rule of reason' test applies, that is, if the public welfare be not involved and the restraint upon one party be not greater than the protection to the other requires, the contract will be sustained although it in some degree may be said to restrain trade (*Great Western Distillery Products* vs. *John A. Wathen Distillery Co.*, 10 Cal.2d 447, 74 P.2d 745, 748 (1937)).

 "Although the agreement bears some indication of a horizontal restraint, that is, an agreement between retailers, it was ancillary to and a

---

[1]By so doing we render moot the contention of appellant that the question of the validity of the agreement was not subject to arbitration. (See *Alpha Beta Mkts., Inc.* v. *Amal. Meat Cutters* (1956) 147 Cal.App.2d 343, 350 [305 P.2d 163].)

condition precedent to the execution of a lease agreement between the landlord and Mr. Hong. The participation of the landlord in signing the agreement and requiring its execution prior to the granting of a lease to the defendant Hong is in the nature of a grant of exclusive distributorships within the shopping center whereby one store is permitted to sell beer, wine and liquor and other [sic] is permitted to sell Middle Eastern food products. Exclusive distributorships are not illegal per se."[2]

The order appealed from is affirmed.

Compton, J., and Gates, J., concurred.

---

[2]We note in passing that appellant was willing to accept the trade protection afforded him by section 35 of his lease, set out above, such that his position on the issue would appear to be one which seeks the best of all possible worlds for the conduct of his business.