[No. H008473. Sixth Dist. Jan. 6, 1992.]

BKHN, INC., Plaintiff and Appellant, v.
DEPARTMENT OF HEALTH SERVICES et al., Defendants and
Respondents.

302

## Counsel

Beveridge & Diamond, Robert D. Wyatt, David D. Cooke and Peter R. Krakaur for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Ken Alex and Susan S. Fiering, Deputy Attorneys General, for Defendants and Respondents.

## Opinion

**AGLIANO, P. J.**—Plaintiff BKHN, Inc., filed this action for declaratory relief to challenge demands made against it by respondent Department of Health Services (DHS) for payment of environmental cleanup costs related to mercury contamination in Almaden Quicksilver County Park. The trial court entered a judgment of dismissal after sustaining the demurrer of DHS without leave to amend against BKHN's first amended complaint. The court concluded that "a 'declaration or determination is not necessary or proper at the time under all the circumstances.' CCP Section 1061." Plaintiff appeals. We will affirm for the reasons explained below.

### FACTUAL AND PROCEDURAL BACKGROUND

The procedural question of whether the demurrer was properly sustained in this case must be assessed in light of the underlying substantive law. Both the national and state governments have enacted legislation providing for remedial action when hazardous substances are discovered in the environment. The federal law, Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA, 42 U.S.C. §§ 9601-9675) provides that a party is liable for remedial costs incurred if it owns the contaminated property or owned the property at the time during which the hazardous substances were disposed. (42 U.S.C. § 9607(a).) Liability under CERCLA may be joint and several. (*U.S.* v. *Stringfellow* (C.D.Cal. 1987) 661 F.Supp. 1053, 1060.) Any person, including a state, may file an action seeking contribution for costs incurred pursuant to the statute from any other person. (42 U.S.C. § 9613.)

The corresponding California law, enacted in 1980, is called the Carpenter-Presly-Tanner Hazardous Substance Account Act (HSAA, Health & Saf. Code, §§ 25300-25395). It incorporates many of the provisions of CERCLA, including those that provide for liability. (Health & Saf. Code, § 25323.5.) Section 25363 of the Health and Safety Code further provides, however: "(a) [a]ny party found liable for any costs or expenditures recoverable under this chapter who establishes by a preponderance of the evidence that only a portion of those costs or expenditures are attributable to that party's actions, shall be required to pay only for that portion. [¶] (b) . . . [i]f the trier of fact finds the evidence insufficient to establish each party's portion of costs or expenditures under subdivision (a), the court shall apportion those costs or expenditures, to the extent practicable, according to equitable principles, among the defendants." DHS is the state agency charged with the responsibility of administering the provisions of the HSAA.

Because this is an appeal from an order sustaining a demurrer, we recite the facts as alleged in the first amended complaint. (*Storch* v. *Silverman* (1986) 186 Cal.App.3d 671, 675 [231 Cal.Rptr. 27].) The Almaden Quicksilver County Park in Santa Clara County was found to contain mercury in its soil and surface waters at a level exceeding regulatory standards. From 1845 until approximately 1968, parcels of property located within the current boundaries of the park were owned by numerous persons and/or entities, unrelated to plaintiff. During those years, mercury mining operations were conducted at the site. In 1968, NIMCC, plaintiff's alleged corporate predecessor in interest, acquired some of the land in the site. It conducted intermittent mining activites on a portion of the site from approximately July 1968 until May 1971, at which time it permanently ceased its activities. NIMCC's mercury production constituted no more than 0.3 percent of the total mercury produced from the site since the date of commencement of mining.

Between 1972 and 1975, the County of Santa Clara (the County) purchased the land from NIMCC. The site has been open to the public as a park since 1977.

In October of 1987 DHS issued a remedial action order to BKHN and the County which alleged that the site's soil and surface waters were contaminated with mercury at levels above applicable regulatory standards, and that plaintiffs were responsible for remediation of the site.

In June of 1990, BKHN's attorney received a letter from DHS which stated, in part: "Your client [BKHN] has been identified as one of the two Responsible Parties (RPs) for remedial or removal action costs incurred

during the cleanup of the Almaden Quicksilver County Park site. California Health and Safety Code Section 25360 provides for the recovery of costs from RPs as follows: [language of statute]. [¶] The federal Comprehensive Environmental Response, Compensation, and Liability Action (CERCLA) of 1980, Section 107 also authorizes cost recovery from RPs. [¶] RPs may be held jointly and severally liable for site cleanup costs under CERCLA. This means that the [DHS] may collect the entire amount due for the costs incurred at the site from any one RP. The invoice is for all cleanup costs incurred at this site. Enclosed with this letter is a list of all RPs for this site. You may wish to negotiate with the other RPs to allocate the site cleanup costs among yourselves." The letter went on to state that the amount owing was $112,734.30. It then provided: "This invoice is due and payable within thirty (30) days of the date of this letter. By mailing this payment to the above address with a copy of the invoice within thirty (30) days you will ensure that it is credited to the proper account and forestall any additional collection action by DHS. [¶] Although the entire balance of this invoice is currently due, any partial payments will terminate future interest charges on the amount paid. Interest will continue to accrue on any portion of the outstanding balance not paid within thirty (30) days." The County received the same letter.

BKHN advised DHS by letter that under Health and Safety Code section 25363 it was required to pay only that portion of costs for cleanup which was attributable to its mercury production, and therefore declined to make the payment demanded.

In October 1990, DHS sent another letter to BKHN demanding payment of $133,233.07.[1] This letter was designated a "FINAL NOTICE" and stated, in part: "Failure to pay this debt may result in offset of your State income tax refund or any other payment made by the State Controller's Office pursuant to Section 12419.5 of the Government Code." BKHN reiterated its position and refused to make the requested payment.

The parties note that the costs for which DHS seeks reimbursement are only for the initial phases of the cleanup. There is still work to be done and the amount which will be needed to complete remediation is not yet known. Likewise, there has been no final determination of liability with respect to either BKHN or the County, nor has BKHN admitted any liability.

In November 1990, BKHN and the County filed a complaint for declaratory relief against the DHS, Hazardous Substance Account, and Hazardous

---

[1] There is no explanation for the different amounts in the two letters.

Cleanup Fund.[2] Plaintiffs' complaint sought a declaration that "liability under the Act [HSSA] for costs incurred pursuant to the Act is not joint and several; that liability under the Act for costs incurred pursuant to the Act is to be apportioned according to equitable principles among parties found liable under that Act pursuant to Health & Safety Code § 25363; that plaintiffs BKHN and County are obligated to pay only the portion of removal or remedial costs or expenditures at the Site, if any, that are attributable to each party's acts; that the Account or the Fund shall pay any 'State shares' associated with the removal and remedial activities at the . . . Park; and that to the extent that the state seeks reimbursements for money expended from the Fund, such reimbursement must come from the Account and not the plaintiffs."

Defendants demurred to the complaint, arguing that declaratory relief should not be granted because the matter was not yet ripe for adjudication, that there was no actual controversy between the parties and that there was no immediate threat of harm. During the hearing on the demurrer, DHS waived the right to offset the amounts it demanded from the plaintiffs against any tax refund they might be due or any other payment made by the Controller's office. The trial court then sustained the demurrer, "with leave to amend in 10 days, on the grounds that the controversy is not ripe, in view of the stipulation made in open court that Defendants would waive any right to offset the amount due against any tax refund pursuant to Government Code Section 12419.5. It thus appears that a 'declaration or determination is not necessary or proper at the time under all the circumstances.' CCP Section 1061."

Plaintiffs filed an amended complaint for declaratory relief in February 1991. It contained essentially the same allegations of the original except that it included additional allegations regarding the harm they were exposed to and the nature of the controversy. Defendants filed another demurrer which the court sustained, this time without leave to amend. The court ruled: "Despite the amendments plaintiffs have made, it still appears to the court in the exercise of its discretion that a 'declaration or determination is not necessary or proper at the time under all the circumstances.' CCP Section 1061."

---

[2]The HSSA provides funds for the state to meet its obligation for the cleanup of federal superfund sites, and also creates a state superfund, the Hazardous Substance Account (HSA), under which the DHS may list and cleanup sites in the state, independent of federal law. The Hazardous Substance Cleanup Bond Act of 1984 was enacted to provide more money for site cleanup. (Health & Saf. Code, § 25385 et seq.) The bond act created the Hazardous Substance Cleanup Account. Both of these funds are required to be named as parties in actions involving potential use of their funds. The bond act also created a procedure by which potentially responsible parties could arbitrate to apportion liability. There is nothing in the record before us to indicate whether the parties have attempted to utilize that procedure in this case.

BKHN has appealed from the judgment of dismissal entered pursuant to the court's order. The County has not appealed.

## Discussion

Section 1060 of the Code of Civil Procedure provides that "Any person . . . who desires a declaration of his rights or duties with respect to another, or in respect to . . . property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action in the superior court . . . for a declaration of his rights and duties in the premises. . . ." ■ "The 'actual controversy' referred to in this statute is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do. [Citations.]" (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 117 [109 Cal.Rptr. 799, 514 P.2d 111].) " 'A difference of opinion does not give rise to a justiciable case until an actual concrete controversy arises.' " (*Wilson* v. *Transit Authority* (1962) 199 Cal.App.2d 716, 722 [19 Cal.Rptr. 59].)

■ Section 1061 of the Code of Civil Procedure provides: "The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Although this section confers wide powers upon the trial court, its discretion is not unlimited. "It is a legal or judicial discretion, hardened by experience into rule, and its exercise is subject to appellate review. (Borchard, Declaratory Judgments, p. 299.) . . . Where, therefore, a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction; and if it does enter a dismissal, it will be directed by an appellate tribunal to entertain the action. Declaratory relief must be granted when the facts justifying that course are sufficently alleged." (*Columbia Pictures Corp.* v. *DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747].)

■ " 'The principle that [the court] will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. . . . A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Pacific Legal Foundation* v. *Califorinia Coastal Com.* (1982) 33 Cal.3d 158, 171 [188 Cal.Rptr. 104, 655 P.2d 306].)

■ Although there is no administrative regulation involved in this case, we believe the standards developed by courts when called upon to review the propriety of such regulations prior to their application in declaratory relief actions are useful, in general, when an administrative agency is involved. " 'The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " (*Pacific Legal Foundation* v. *California Coastal Com.*, *supra*, 33 Cal.3d 158, 171, citing *Abbott Laboratories* v. *Gardner* (1967) 387 U.S. 136, 148-149 [18 L.Ed.2d 681, 691-692, 87 S.Ct. 1507], italics omitted.)

In *Pacific Legal Foundation*, plaintiffs sought judicial review of guidelines promulgated by the Coastal Commission interpreting public access provisions of the California Coastal Act. The California Supreme Court held "plaintiffs' posture lacks the urgency and definiteness necessary to render declaratory relief appropriate. Although their constitutional claims are impossible to weigh in the abstract [fn. omitted], their main contentions relate to the narrower question whether the guidelines reasonably interpret the public access portions of the Coastal Act. It is true that the parties' interests are adverse, and the issues have been thoroughly addressed in the voluminous briefs on file. [Citations.] Nonetheless, the abstract posture of this proceeding makes it difficult to evaluate even the issues relating to the consistency of the guidelines with the Coastal Act. Plaintiffs are in essence inviting us to speculate as to the type of developments for which access conditions might be imposed, and then to express an opinion on the validity and proper scope of such hypothetical exactions. We decline to enter into such a contrived inquiry. On balance, it does not appear that the first prong of the *Abbott* test is satisfied: the issues are not yet appropriate for immediate judicial resolution." (33 Cal.3d at p. 172.)

■ We find the instant matter likewise lacks the urgency and definiteness necessary to warrant declaratory relief. BKHN wants a declaration that liability under the HSAA may never be joint and several, regardless of the circumstances. In order to determine this proposition, the court would have

to imagine a myriad of hypotheticals, speculate on the application of Health and Safety Code section 25363 to those hypotheticals, and conclude that under no circumstance would equitable principles warrant a finding of joint and several liability among the defendants. In the words of *Pacific Legal Foundation*, "[w]e decline [to compel a court] to enter into such a contrived inquiry." (33 Cal.3d at p. 172.)

We further find the matter not ripe for resolution because there is no "definitive and conclusive relief" which could be granted. A declaration that liability under the HSSA was several only would not affect BKHN's ultimate obligations. The DHS may elect to proceed under CERCLA, and assert joint and several liability on that basis. The declaratory relief sought by BKHN would not serve to provide the kind of finality for which such relief is fashioned.

■ BKHN argues that the fact that there is no sum certain at this time in terms of the cost of the total cleanup should not preclude declaratory relief. We agree that in certain instances declaratory relief is appropriate before a fixed amount of damages or liability is known. (*Rubin* v. *Toberman* (1964) 226 Cal.App.2d 319 [38 Cal.Rptr. 32] [declaratory relief available to interpret a real estate contract provision so buyer could determine rights before spending money for certain improvements]; *Sattinger* v. *Newbauer* (1954) 123 Cal.App.2d 365 [266 P.2d 586] [declaratory relief available to determine liability of a dissolving partnership for an alleged debt]; and *Schafer* v. *Wholesale Frozen Foods, Inc.* (1959) 171 Cal.App.2d 232 [340 P.2d 308] [declaratory relief available to determine rights and obligations between a lessee and sublessee in relation to uncertain amount owed lessor for damage to premises].) We do not find this principle controlling in the present case, however.

In *Rubin, Sattinger* and *Schafer* declaratory relief was utilized to define the legal relationships between the parties. The court was able to determine conclusively which party would be responsible for specific liabilities. The eventual amount of debt was irrelevant; the controversies involved the obligations as between the parties. In the instant matter, no such conclusive determination can be made. The basic problem the parties face in this matter—who will bear what amount of the cost of cleaning up the park— would not be addressed by granting BKHN the relief it seeks.

■ BKHN further contends that this case is fit for declaratory relief because it involves a "dispute over a policy and practice of the State government in implementing State laws and regulations." In support of this argument, plaintiff relies upon *Californians for Native Salmon etc. Assn.* v. *Department of Forestry* (1990) 221 Cal.App.3d 1419 [271 Cal.Rptr. 270], wherein the appellate court held that an action for declaratory relief could be

maintained against an administrative agency to consider allegations that the agency had a policy of ignoring or violating applicable laws and regulations, even though no specific agency decision was being attacked. There, plaintiffs alleged that the California Department of Forestry repeatedly violated the Forest Practice Act and its implementing regulations in the manner in which it approved timber cutting plans. Plaintiffs alleged irreparable harm to the environment by the Department's failure to abide by the legal requirements of the Forest Practice Act. The court held that the action was justiciable in that plaintiffs had alleged an actual controversy relating to whether the department was engaged in conduct or had established policies in violation of applicable statutes, regulations and judicial decisions. Recognizing that the department was the body charged with approving timber harvest plans, the court observed that an action for declaratory relief would resolve the issues regarding the interpretation of the rules thereby avoiding piecemeal litigation by eliminating the need for large numbers of challenges to individual timber harvest plan approvals. (*Id.* at p. 1430.)

The facts of the present case are different. In *Californians for Native Salmon*, the court found that an actual controversy existed between the parties, capable of final, meaningful resolution. As explained above, we do not believe similar relief is possible in this case. Moreover, unlike the Department of Forestry which was required to approve timber harvest plans, the DHS has no authority to finally determine whether BKHN will indeed be liable for cleanup costs, and if so, to what extent. The DHS's interpretation of the HSAA will not govern the extent of BKHN's liability. BKHN is not challenging the DHS's ability to seek interim reimbursement for cleanup costs, it is challenging its policy of seeking all interim costs from each party on a joint and several basis. A decree stating the DHS could seek only that portion of costs from BKHN attributable to the mercury contamination caused by its mercury mining operations would be premature and meaningless if it were made before the extent of liability was determined.[3]

Plaintiff also fails to satisfy the second component of the *Abbott* test, i.e. "the hardship to the parties of witholding court consideration." (*Abbott, supra,* 387 U.S. at p. 149 [18 L.Ed.2d at p. 691].) BKHN argues that it will suffer immediate harm in several ways. It argues that interest will accrue on any unpaid amounts if it does not pay DHS, and that its ability to engage in meaningful business planning is handicapped because it does not know its ultimate liability. BKHN also maintains that it might be penalized for failure to cooperate if it does not pay DHS the money, that it risks being

---

[3]We also reject plaintiff's argument that Government Code section 11350 furnishes a separate basis for authorizing an action for declaratory relief. That section applies to administrative regulations formulated under the Administrative Procedure Act. (Gov. Code, § 11340 et seq.)

unable to collect any monies it might overpay, and the cleanup of the site might be slowed down if the parties are in dispute.

While all of these alleged harms are theoretically possible, we fail to see how they would be relieved were the trial court to grant plaintiffs' request for declaratory relief. As noted earlier, BKHN is not challenging the DHS's request for interim payment, nor is it seeking a definitive determination of its liability. It simply wants a declaration that the HSAA prohibits a finding of joint and several liability. Even if the court made such a declaration, BKHN would still not know its ultimate liability, or what portion of the cleanup costs it would have to bear. It would have to speculate as to its ultimate liability and what estimated sum to pay based thereon to stop interest accruing on that portion. It faces the risk that an estimated amount would be incorrect with or without a declaration. The other asserted harms are speculative at best and do not warrant declaratory relief.

We are also unpersuaded that the public interest will be injured by the court's denial of declaratory relief, as plaintiff contends. The public's interest in the enforcement of the HSAA does not require a court to speculate as to the application of that act to hypothetical situations.

### Conclusion

We understand plaintiff's concern about the uncertainty of its obligation based on the demand for payment made by DHS. It appears, however, that the enormous task of environmental cleanup with its attendant problems is such that it will be fraught with many uncertainties, financial, technical, legal and otherwise. Under the circumstances of this case, BKHN has not made a case for declaratory relief. We agree with the trial court that such would not be "necessary or proper" at this time.

The judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.