126 F.3d 1131
 97 Cal. Daily Op. Serv. 7394, 97 Daily Journal
D.A.R. 11,921
GENERAL COMMERCIAL PACKAGING, INC., Plaintiff-Appellant,
v.
TPS PACKAGE ENGINEERING, INC., an Arizona corporation;
William Teags, Defendants-Appellees.
GENERAL COMMERCIAL PACKAGING, INC., Plaintiff-Appellee,
v.
TPS PACKAGE ENGINEERING, INC., an Arizona corporation;
William Teags, Defendants-Appellants.
 Nos. 95-56336, 96-55060.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 12, 1996.
Decided June 4, 1997.
As Amended on Denial of Rehearing and Rehearing En Banc
Sept. 16, 1997.
 
 J. Douglas Bishop and Walter R. Allan, Pillsbury, Madison & Sutro, Los Angeles, California, Deborah L. Greene and Michael E. Demont, Kirschner, Main, Petrie, Graham, Tanner & Demont, Jacksonville, Florida, Marvin Bartel, Pillsbury, Madison & Sutro, San Francisco, California, for plaintiff-appellant-cross appellee.
 Mark S. Priver, Ohashi & Priver, Pasadena, California, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the Central District of California; David V. Kenyon, District Judge, Presiding. D.C. No. CV-94-03020-KN.
 Before: HALL, KOZINSKI and HAWKINS, Circuit Judges.OPINION
 PER CURIAM.
 
 
 1
 We decide whether a bargained-for contractual provision barring one party from courting a specific named customer, as opposed to an entire trade or industry or a significant portion of it, violates California's prohibition against contracts in restraint of trade.
 
 
 2
 * General Commercial Packaging (General Commercial) provides packing and crating services to businesses in Florida and California. It was hired by its long-standing customer, Walt Disney Companies (Disney), to package materials for transport to the new EuroDisneyland, and sought a subcontractor to help with the work in California. General Commercial ultimately chose defendant TPS Package Engineering (TPS).
 
 
 3
 To protect its business relationships with Disney and other California customers, General Commercial required TPS to sign a contract containing the following provision before beginning work on the EuroDisneyland Project:
 
 
 4
 TPS agrees, that during the term of this contract, and for one year after termination of this contract, that TPS nor any of its employees will back-solicit or otherwise deal directly with Walt Disney Companies, its affiliates and subsidiaries, or any other company which G.C.P. Inc. has introduced to and contracted with TPS to perform packing and crating subcontracting services. TPS agrees that any work it directly provides to or performs for any G.C.P. Inc. client without G.C.P. Inc. involvement or approval will result in a sales commission automatically and retroactively applied to all such transactions of 25% of Gross Invoice to the client payable in full from TPS to G.C.P. Inc.
 
 
 5
 ER 69 at 14. But it's a small world after all, and so, before long, TPS began working directly for Disney. General Commercial filed suit in California Superior Court for breach of contract and tortious interference with contractual and business relationships. TPS removed the case to federal court, where the district judge granted TPS's cross-motion for summary judgment, holding that the contract violates California's prohibition against contracts in restraint of trade. The district court denied TPS's request for costs and attorney's fees. Both sides appeal.
 
 II
 
 6
 Under California law, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal.Bus. & Prof.Code § 16600. Although TPS raised no objection to the clause which precluded it from dealing directly with Disney--thereby cementing a highly profitable subcontracting relationship with General Commercial--it now claims that section 16600 renders its promise void. TPS reads section 16600 to nullify "every part of every contract that restricts a person from pursuing, in whole or in part, any trade, business or profession." TPS's Brief at 13. The contract it signed, TPS concludes, is invalid because it prohibits TPS from infiltrating Disney's corner of the packing and shipping market.
 
 
 7
 We rejected this strict interpretation of section 16600 in Campbell v. Board of Trustees of Leland Stanford Junior Univ., 817 F.2d 499 (9th Cir.1987). The plaintiff in Campbell, a psychologist responsible for developing a widely used career counseling test, signed a contract with Stanford University promising not to engage in any activities that might "injure the sale of" the test. Id. at 501. In deciding whether the contract violated section 16600, we stated:
 
 
 8
 Even though the California Legislature rejected the common-law rule that "reasonable" restraints of trade are generally enforceable, it did not make all restrictions unenforceable.... "[W]hile the cases are uniform in refusing to enforce a contract wherein one is restrained from pursuing an entire business, trade or profession ..., where one is barred from pursuing only a small or limited part of the business, trade or profession, the contract has been upheld as valid."
 
 
 9
 Id. at 502 (quoting Boughton v. Socony Mobil Oil Co., 231 Cal.App.2d 188, 41 Cal.Rptr. 714, 716 (1964)). Campbell thus turned on whether the plaintiff's contract with Stanford "completely restrained" him from pursuing his profession. Id. at 503.
 
 
 10
 Applying the rule of Campbell, section 16600 does not impair General Commercial's contract with TPS unless it entirely precludes TPS from pursuing its trade or business. This interpretation of section 16600 is compelled not only by Campbell, but also by the state court rulings interpreting the section. Boughton v. Socony Mobil Oil Co., 231 Cal.App.2d 188, 41 Cal.Rptr. 714 (1964), upheld the validity of a contract that precluded the plaintiffs from operating a gas station on a particular parcel of property. The contract did not contravene section 16600 because the "plaintiffs [were] not prohibited from carrying on the lawful business of selling petroleum products or operating a service station." Id. 41 Cal.Rptr. at 716. Similarly, King v. Gerold, 109 Cal.App.2d 316, 240 P.2d 710 (1952), gave effect to a contract limiting the plaintiff's right to manufacture and sell trailers of a particular design, concluding the contract did not preclude him "from carrying on his lawful business of manufacturing trailers." Id. 240 P.2d at 712.
 
 
 11
 TPS claims that the teaching of Campbell, Boughton and King--that a contract does not violate section 16600 if it does not preclude a contracting party from engaging in its trade or business altogether--applies only when the contract "involves a reasonable restraint on the use of property." TPS's Brief at 17. This argument is based on the observation that the contracts in these cases all implicated a property interest of some kind: In Campbell, the contract prohibited the plaintiff from developing competitors to a copyrighted test; in Boughton, the contract barred the plaintiff from building a gas station on a particular parcel of land; in King, the contract prohibited the plaintiff from manufacturing a patented model of trailer.
 
 
 12
 While it's true that in each of these cases the contract had some nexus to a particular piece of property, this fact was not dispositive. The contract in Campbell, for example, did prohibit the plaintiff from infringing Stanford's copyright in the career guidance test, but it also barred him from "preparing or causing to publish ... any similar work or anything that may injure the sale of" the test. 817 F.2d at 501. Indeed, the contract must have done more than simply protect Stanford's copyright; otherwise Stanford would have had no reason to bargain for Campbell to sign it. Campbell's agreement, just like TPS's, curtailed his freedom to compete; both contracts were designed to prevent one party from losing business to the other.[1]
 
 
 13
 TPS claims that Campbell 's rule is, at bottom, a rule of reasonableness, and that California courts have refused to interpret section 16600 as imposing such a rule. See Bosley Medical Group v. Abramson, 161 Cal.App.3d 284, 207 Cal.Rptr. 477, 480 (1984) ("[T]he so-called rule of reasonableness was rejected by this state in 1872."). However, determining whether a contract precludes a party from engaging in a trade or business is not an inquiry into its reasonableness. A "rule of reason" compares the costs and benefits of a restraint of trade, and permits even significant restrictions if the benefits outweigh the costs. See Martikian v. Hong, 164 Cal.App.3d 1130, 211 Cal.Rptr. 66, 68 (1985) ("[I]f the public welfare be not involved and the restraint upon one party be not greater than the protection to the other requires, the contract will be sustained although it in some degree may be said to restrain trade."); Richard A. Posner, Antitrust Law 27 (1976) (rule of reason allows "a fuller and more flexible inquiry into the economic consequences of a challenged agreement."). But under Campbell, no account is made of costs and benefits; the only question is the breadth of the restraint. Thus, the court in Campbell disclaimed a rule of reason, yet required the plaintiff to prove that the contract "completely restrained" him from pursuing his profession. See 817 F.2d at 502 ("Even though the California Legislature rejected the common-law rule that 'reasonable' restraints of trade are generally enforceable, it did not make all restrictions unenforceable.").
 
 
 14
 General Commercial's contract with TPS is therefore valid unless it "completely restrain[s]" TPS from plying its trade or business. Campbell, 817 F.2d at 503; see also Great Frame Up Systems, Inc. v. Jazayeri Enters., 789 F.Supp. 253, 256 (N.D.Ill.1992) (under Campbell, contracts satisfy section 16600 if party is not "prevented from engaging in an entire profession"). In considering this question, we recognize that a contract does not have to impair a party's access to every potential customer to contravene section 16600. Because most businesses cannot succeed with only a handful of customers, a contract can effectively destroy a signatory's ability to conduct a trade or business by placing a substantial segment of the market off limits. This explains why courts have been less tolerant of contracts that prohibit employees from soliciting all of their former employers' customers, see Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1338 (9th Cir.1980); Moss, Adams, & Co. v. Shilling, 179 Cal.App.3d 124, 224 Cal.Rptr. 456, 459 (1986), and of wholesale covenants not to compete. See Bosley Medical Group, 207 Cal.Rptr. at 480.
 
 
 15
 TPS has never disputed General Commercial's claim that the contract "does not prohibit TPS from engaging in the crating and packing business." General Commercial's Reply to TPS's Opposition to Motion for Summary Judgment, at 8 (June 12, 1995). Nor could it. The agreement only precludes TPS from dealing with Disney and those other firms which General Commercial "has introduced to and contracted with TPS to perform packing and crating subcontracting services." ER 69 at 14 (emphasis added). Apart from Disney, TPS was not barred from soliciting work from any firm with which it had a prior relationship. The contract thus only limits TPS's access to a narrow segment of the packing and shipping market.
 
 
 16
 The district court's order granting TPS's motion for summary judgment on Count I of its complaint is reversed. The breach of contract claim is remanded to the district court for consideration of any remaining defenses which TPS may have raised.
 
 III
 
 17
 General Commercial also sued TPS and TPS's former president, William Teags, for tortious interference with a contract and intentional interference with prospective economic advantage. These claims were based on General Commercial's expectation of receiving further business from Disney, business which TPS appropriated for itself.
 
 
 18
 To sustain a claim for tortious interference with a contract or prospective economic advantage, General Commercial must allege some injury--like the misappropriation of trade secrets--not compensated by contract remedies.[2] Otherwise, it could recover punitive damages for nothing more than a simple breach of contract. See Better Food Markets v. American Dist. Tel. Co., 40 Cal.2d 179, 253 P.2d 10, 15-16 (1953). General Commercial has not alleged any such injury. The district court therefore properly granted TPS's motion for summary judgment on General Commercial's tort claims. Id. 253 P.2d at 16 ("In the present case the duty created by the contract was one for which liability for a breach thereunder was fixed, and whether the action is brought in tort or in contract the nature of the duty remains the same.").
 
 
 19
 The district court's order denying General Commercial's motion for summary judgment and granting TPS's cross-motion is AFFIRMED in part, REVERSED in part and REMANDED; the order denying defendants' motion for costs and attorney's fees is AFFIRMED. Each side will bear its own costs on appeal.
 
 
 
 [1]
 The holdings of Boughton and King are similarly unequivocal, and apply without regard to whether or not the contract limits a party's right to use a piece of property. See Scott v. Snelling & Snelling, Inc., 732 F.Supp. 1034, 1042 (N.D.Cal.1990) ("[O]nly restrictive covenants which prohibit an individual from pursuing an 'entire business, trade, or profession ....' are invalid under section 16600." (quoting Boughton, 41 Cal.Rptr. at 716))
 
 
 [2]
 This is especially true here because the contract includes a liquidated damages clause that sets the price TPS must pay for taking Disney's business from General Commercial: 25 percent of TPS's gross invoices to Disney. This price remains constant no matter how underhanded TPS's scheme for obtaining the work, be it using its relationship with General Commercial to gain access to key employees at Disney, or breaching any fiduciary relationship it might have had with General Commercial