Diane **LATONA**, Plaintiff,

v.

**AETNA U.S. HEALTHCARE INC.,** Defendant.

**No. CV 98–0066 NM (RZX).**

United States District Court, C.D. California.

Sept. 27, 1999.

---

**1090**

Michael A. Brewer, Michael C. Denlinger, Hornberger Ghazarians & Brewer, Los Angeles, CA, for Diane L. Latona, plaintiffs.

John J. Swenson, Peter N. Greenfeld, Wendy A. Lutzker, Georgiana G. Rodiger, Gibson Dunn & Crutcher, Los Angeles, CA, for Does, 1 through 100 inclusive, Aetna U.S. Healthcare of California Inc, defendants.

## ORDER RE ENFORCEABILITY OF AETNA'S NON–COMPETE AND CONFIDENTIALITY AGREEMENT

MANELLA, District Judge.

### I. Introduction

#### A. *Factual Background*

Aetna Healthplans merged with U.S. Healthcare in early 1997, forming Aetna U.S. Healthcare, Inc. ("Aetna"). After the merger, Aetna sought to continue U.S. Healthcare's policy of requiring all employees with access to confidential, proprietary, or trade secret information to sign its Non–Compete and Confidentiality Agreement ("Agreement"). In May 1997

Aetna asked its employees to sign the Agreement. Plaintiff refused, leading Aetna to terminate her on August 8, 1997.[1] Latona brought this action in state court on November 24, 1997, alleging, *inter alia,* that Aetna had violated California Business and Professions Code Section 16600. Section 16600 provides, "[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. B & P Code § 16600. Aetna removed the case to federal court on January 6, 1998. On April 8, 1998, Judge Real granted in part Aetna's 12(b)(6) motion to dismiss several claims in Latona's complaint without leave to amend. Among the claims dismissed was Latona's cause of action alleging a violation of section 16600. The case was transferred to this Court on January 14, 1999.

### B. The Agreement

The Agreement contained several clauses at the heart of this controversy. The first paragraph (the "non-compete clause") states:

> [S]o long as I am employed with the Company and for a period of six months after my resignation, the termination of my employment with the Company or my negotiated departure from employment with the Company, I shall not, directly or indirectly, ... (b) become an employee of or (c) act as a consultant or contractor to, any competitor of the Company engaged in health care business ("Competitor"). Notwithstanding the foregoing, nothing in this Agreement shall prohibit me from becoming (i) an employee of an independent and separate subsidiary or division of a Competitor if I do not engage in any business activity of the Competitor that is competitive to any aspect of the Company's health care businesses; (ii) an employee of a Competitor if the Competitor's office from which I will work is not located within the state in which the Company maintains an office which engages in health care business and from which I worked as an employee of the Company at any time during the 24–month period immediately prior to the date of termination of my employment with the Company; or (iii) an employee of a Competitor if I do not have any responsibility for or significant involvement with any area which is within a Restricted Area (as defined below) or within 50 miles thereof. As used in this Agreement, "Restricted Area" means any Aetna U.S. Healthcare area over which or in which I had responsibility or significant involvement during the 24–month period immediately prior to the date of termination of my employment with the Company. As used herein, a Competitor does not include any hospital, private medical practice or academic institution that does not own or operate (directly or indirectly) and is not otherwise an affiliate of, a health insurance company, a managed care company or a health benefit plan (including an HMO, POS or PPO plan).

P's Exh. A.

In Paragraph 3 of the Agreement (the "anti-solicitation clause"), the employee agrees not to "directly or indirectly solicit or aid in the solicitation on behalf of any competitor of the Company engaged in health care business" any entity or individual who was an Aetna employee, customer, or provider of health care services to Aetna within the year prior to leaving the company. The employee is constrained in this way for twelve months after termination of employment "for any reason, whether with or without cause and whether voluntarily or involuntarily." *Id.*

Paragraph 2 states that employees terminated but entitled to a continuation of

---

**1.** Several other employees refused to sign, were terminated, and also filed suit. Their suits were consolidated and assigned to Judge Dean Pregerson. Plaintiff moved to have the instant case deemed related to these other cases and consolidated with them, but Judge Real, to whom this case was at that time assigned, denied the request on January 22, 1998. Thus, Ms. Latona is the only plaintiff before this Court.

salary or severance payment, and those terminated without cause, are not subject to the terms of paragraph 1 (though they are still subject to the paragraph 3 restrictions).

Paragraph 4 (the "confidentiality clause") provides a non-exclusive list of trade secrets, confidential information, and proprietary materials. It concludes, "I covenant and agree to hold all of the foregoing ... in the strictest confidence and shall not disclose, divulge or reveal the same to any person or entity during the term of my employment with the Company or any time thereafter."

## II. Analysis

As the parties have laid out their arguments, there are four primary grounds of dispute: whether precedent dictates finding no violation of public policy, whether the issue is ripe, whether California public policy would indeed condemn the Agreement, and whether the allegedly violative provisions of the Agreement are severable from the rest of the document.

### A. Weight of Precedent

This Court is not bound by any previous decisions in this or related cases. The Court may, and in this case believes it must, make its own determination of the enforceability of the Agreement. Plaintiff's original complaint alleged claims for both termination in violation of public policy and termination without good cause. By the time the case was reassigned to this Court, Judge Real had already dismissed the former cause of action. With respect to the remaining cause of action, the fact remained that *if* the Agreement violated public policy, defendant's firing plaintiff for refusing to sign it could not, as a matter of law, constitute good cause. Even if plaintiff were an at-will employee, as Aetna alleges, terminating her for refusing to sign a non-compete clause that violated public policy would be actionable.

Because the issue was a legal one, and required resolution before the case could proceed to trial, the Court ordered additional briefing and indicated its intention to decide the issue.

### B. Ripeness

As defendant acknowledges, "No California court has directly addressed ... whether merely requiring an employee to sign an agreement containing a non-compete provision is illegal." Def. at 16. However, *Baker Pacific Corp. v. Suttles*, 220 Cal.App.3d 1148, 269 Cal.Rptr. 709 (1990) provides a close parallel. *Baker* examined whether requiring employees to sign a waiver that contravened public policy as a condition of employment violated the law.[2] The employer in that case, like Aetna here, argued that the challenged provision, if in fact unenforceable, by definition would have no effect on the prospective employees: Accordingly, no violation of law could occur unless and until the employer attempted to enforce the invalid provision. The court soundly rejected this contention: "We find this argument circular and unintelligible. Since we have determined the release as proffered is violative ... it follows that requiring prospective employees to sign an illegal agreement as a condition of employment is contrary to law." *Baker*, 220 Cal. App.3d at 1154, 269 Cal.Rptr. 709. The court found that denial of an employment opportunity (stemming from the prospective employees' refusal to sign the invalid contract) constituted an illegal application of the release: "The 'pistol to the head' approach to an employment relationship, where hiring is conditioned on acceptance of statutorily proscribed terms, is not acceptable to us." *Id.* at 1155, 269 Cal.Rptr. 709.

■ Here, Aetna did more than decline to hire plaintiff; it fired her for refusing to

---

**2.** Under the terms of the waiver, asbestos removal workers would have agreed to "assume all risks in connection with potential exposure of asbestos ..." *Baker*, 220 Cal. App.3d at 1151, 269 Cal.Rptr. 709. The release contravened California Civil Code § 1668, which prevents parties from contracting away their right to sue for fraud or willful injury. *See id.* at 1152 n. 2, 269 Cal.Rptr. 709.

sign the non-compete Agreement. The consequences for plaintiff are neither hypothetical nor conjectural. Thus, while the ripeness doctrine is designed to "prevent the courts . . . from entangling themselves in abstract disagreements," *BKHN, Inc. v. Department of Health Servs.*, 3 Cal.App.4th 301, 309, 4 Cal.Rptr.2d 188 (1992), there is nothing abstract about this case.

■ Aetna nevertheless contends that the Court cannot conduct an enforceability determination without knowing whether a former employee is indeed engaged in competition with it, has threatened to disclose its proprietary information, or has actually disclosed such information. As a preliminary matter, the Court notes that the validity of non-compete clauses may be appropriate for summary adjudication. *See Scott v. Snelling and Snelling, Inc.*, 732 F.Supp. 1034, 1038 (N.D.Cal.1990). Contrary to Aetna's assertions, the issue here is not whether plaintiff's actions violated her employment agreement, but whether the Agreement, on its face, purports to bar employees from engaging in lawful conduct, in clear derogation of section 16600. Thus, in this analysis the application of the Agreement is secondary to its facial validity.

Aetna's argument that ripeness concerns require an employee to sign the Agreement, violate its provisions, and be sued before a court may analyze the provision's enforceability ignores the express purpose of section 16600: to prohibit contracts that restrain employees from engaging in their lawful professions. Under Aetna's scenario, an employee required to sign an Agreement that violates California's strong public policy against such restraints would have the following choices:

(1) She could refuse to sign the Agreement (as Ms. Latona and others did) and be fired;

(2) She could sign the Agreement and, upon leaving Aetna, engage in conduct prohibited by the Agreement, secure in the knowledge that after incurring costly legal bills defending a lawsuit, her position would eventually be vindicated;

(3) She could sign the Agreement, leave her employment, engage in the legal (albeit prohibited) conduct, and pray that Aetna did not come after her;

(4) She could sign the Agreement and, upon leaving Aetna's employ, abide by the terms of the Agreement, even though it prohibited her from engaging in legally protected conduct; or

(5) She could sign the Agreement and remain in Aetna's employ, ignoring any potentially preferable (and wholly legal) employment opportunities with any firm Aetna might regard as a competitor.

None of the first three options is reasonable, as each imposes an unconscionable burden on an employee who asks no more than to continue in her current employment or seek new employment in conformity with California law and century-old public policy. The fourth and fifth options—the only realistic ones for the average employee—have a chilling effect on an employee's mobility and betterment, and result in precisely what section 16600 seeks to prevent: a restraint on California employees from "engaging in a lawful profession." Cal. B & P § 16600.

This dispute became ripe when Aetna presented Ms. Latona with the Agreement, failed to discuss with her alternatives to signing the Agreement, and fired her when she declined to sign it. With the ripeness issue thus settled, the Court next examines whether the Agreement is indeed contrary to California's public policy.

### C. California Public Policy and its Application to the Agreement: B & P Code § 16600.

#### 1. B & P Code § 16600

Section 16600 states, "[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." This protection against restraint of employment qualifies as a strong public policy in California. *See Scott v. Snelling and Snelling, Inc.*, 732 F.Supp. 1034, 1039–40

(N.D.Cal.1990); *Application Group, Inc. v. Hunter Group, Inc.,* 61 Cal.App.4th 881, 900, 72 Cal.Rptr.2d 73 (1998) ("[S]ection 16600 reflects a strong public policy of the State of California." (internal quotation marks omitted)); *KGB, Inc. v. Giannoulas,* 104 Cal.App.3d 844, 848, 164 Cal.Rptr. 571 (1980); *Frame v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 20 Cal. App.3d 668, 673, 97 Cal.Rptr. 811 (1971).

Only two statutory exceptions to § 16600 exist, and neither applies in the instant case.[3] Defendant correctly points out that the courts have also carved out two exceptions: where the restraint on competition is narrow, and where the restraint is necessary to protect trade secrets and prevent unfair competition.

### 2. The Narrow Restraint Exception

■ The parties dispute the degree of restraint on competition that courts will allow. Plaintiff cites language in *Kolani v. Gluska,* 64 Cal.App.4th 402, 75 Cal.Rptr.2d 257 (1998) and *Metro Traffic Control, Inc. v. Shadow Traffic Network,* 22 Cal.App.4th 853, 27 Cal.Rptr.2d 573 (1994) indicating that the restraint must be "carefully limited," *Metro,* 22 Cal.App.4th at 861, 27 Cal. Rptr.2d 573 (internal quotation marks and citation omitted) or "narrowly tailored," *Kolani,* 64 Cal.App.4th at 407, 75 Cal. Rptr.2d 257. Defendant counters that language in *Campbell v. Board of Trustees of Leland Stanford Jr. Univ.,* 817 F.2d 499, 502 (9th Cir.1987) and *General Commercial Packaging, Inc. v. TPS Package Engineering, Inc.,* 126 F.3d 1131, 1132–33 (9th Cir.1997) disallows only a complete restraint. A brief examination of the cases reveals that plaintiff has the better of the argument. *Campbell* cites with approval *Boughton v. Socony Mobil Oil Co.,* 231 Cal.App.2d 188, 192, 41 Cal.Rptr. 714 (1964), which found that restraints on the pursuit of *"only a small or limited part* of the business, trade or profession" have been upheld. *Campbell,* 817 F.2d at 502 (quoting *Boughton,* 231 Cal.App.2d at 192, 41 Cal.Rptr. 714) (emphasis added). Indeed, *Boughton* upheld a *single* restriction on a *single* piece of property. Similarly, the contract the court found valid in *General Commercial* prevented the defendant from soliciting one particular customer. *See General Commercial,* 126 F.3d at 1132. *General Commercial* explained that a total ban on pursuit of a trade or business was not necessary to find a violation of section 16600: "[A] contract does not have to impair a party's access to every potential customer to contravene section 16600.... [A] contract can effectively destroy a signatory's ability to conduct a trade or business by placing a substantial segment of the market off limits." *Id.* at 1134. As the California Courts of Appeal have repeatedly noted, "the interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interest of the employers ...." *Metro Traffic Control, Inc. v. Shadow Traffic Network,* 22 Cal.App.4th 853, 860, 27 Cal.Rptr.2d 573 (1994) (finding non-compete clause barring employees from working for former employer's competitor severely restricted employees' mobility and betterment, and was thus invalid under section 16600) (citations omitted). The "substantial segment of the market" standard therefore provides the touchstone for an investigation of the extent of the narrow restraint exception.

■ An examination of the Agreement's wording shows that it does not qualify for this exception. At a minimum, by its terms, paragraph 1 of the Agreement purports to prevent Aetna employees[4] from

---

**3.** One allows the buyer of an existing business to require the seller not to compete (§ 16601); the other allows a partnership to prevent a departing partner from competing with the continuing entity at dissolution (§ 16602).

**4.** Aetna correctly notes that the non-competition clause does not apply to all former Aetna employees; its applicability depends on the conditions under which the employee was terminated. However, at the time Aetna asks an employee to sign the Agreement, she has no way of knowing whether the non-compete clause will apply to her in the event she leaves the company, either voluntarily or involuntarily.

leaving to work for another health maintenance organization (HMO), preferred provider organization (PPO), or point of service plan (POS),—or any hospital, medical practice, or academic institution that is an affiliate of such HMO, PPO, or POS—for a period of six months, unless her new responsibilities exclude the very area in which she has been working and living. If plaintiff wanted to remain in the health care industry and aimed to comply with the Agreement's restrictions, she would have to take a job at least 50 miles outside of San Bernardino County, Riverside County, and parts of Los Angeles County, or move out of state (if she were to stay in the health care industry).[5] Defendant notes that the geographic restrictions would not apply if plaintiff took a job with an entity that did not meet the Agreement's definition of a "competitor," but the set of entities in the health care field excluded by the Agreement's definition is rather narrow. With the increasing prevalence of HMOs in the medical industry, the set of entities excluded by this definition is shrinking rapidly.

As the California Court of Appeal has noted, "Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets." *Metro Traffic Control, Inc. v. Shadow Traffic Network,* 22 Cal.App.4th 853, 859, 27 Cal.Rptr.2d 573 (1994). Furthermore, any such restrictions must be "carefully limited." *Id.* at 861, 27 Cal.Rptr.2d 573. Just as a law firm could not prevent a legal secretary from working in the same capacity for any other law firm in greater Southern California, neither can Aetna impose a broad prohibition on Ms. Latona, preventing her from engaging in her work as a health care professional for any other HMO in Southern California.

The non-solicitation clause, through its enormous breadth, further serves to restrict an employee's options for future employment. Unlike the non-compete clause, the non-solicitation clause applies to all employees who sign the Agreement, regardless of the method of and reason for the termination of their employment. Non-solicitation agreements are subject to the restrictions of section 16600. *Moss, Adams & Co. v. Shilling,* 179 Cal. App.3d 124, 130, 224 Cal.Rptr. 456 (1986) ("Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets."); *see also Gordon Termite Control v. Terrones,* 84 Cal.App.3d 176, 179, 148 Cal.Rptr. 310 (1978) (refusing to enforce an agreement prohibiting an employee from calling on any accounts he had called on while with former employer, finding "[k]nowledge of potential customers ... is not a trade secret ...."). While non-solicitation agreements of more limited scope have been upheld as valid in California, *see Gordon v. Landau,* 49 Cal.2d 690, 694, 321 P.2d 456 (1958) (finding an agreement restricting a door-to-door salesman from using his former employer's confidential customer list valid under section 16600), the non-solicitation clause here is neither narrowly tailored nor limited to protecting trade secrets.

The magnitude of people and organizations plaintiff would be prevented from contacting under the terms of the non-solicitation clause is extensive. By its terms, the non-solicitation clause would prevent an employee, inter alia, from engaging in conduct which could be construed to "solicit" or "aid in the solicitation on behalf of any competitor" any of the thousands of health care providers doing business with Aetna in the previous 12 months. Plaintiff's immediate supervisor at Aetna, Laura Price, estimated that approximately 15,000 physicians, 125 hospitals, and "a couple of hundred" ancillary

---

**5.** As both parties admit, this restriction would not apply if plaintiff were terminated without good cause, or if the circumstances surrounding her termination entitled her to continued receipt of salary or severance pay. *But see* n. 5, *supra.*

providers existed in her area. Pl. Exh. D. In light of Aetna's own admission that such information is "publicly available at Aetna's website on the Internet," Aetna does not and cannot contend that such customer lists are comparable to the "confidential customer lists" at issue in *Gordon, supra.*[6] In short, the non-solicitation clause alone would preclude plaintiff from engaging in conduct protected by section 16600.

### 3. The Trade Secret Protection Exception

 Employment restrictions that serve to protect a former employer's trade secrets, proprietary information, and confidential information are valid in California. *See, e.g., Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965) (finding that section 16600 permits non-compete provisions in employment contracts when "necessary to protect the employer's trade secrets"). Plaintiff contends that defendant was entitled to legal protection of its trade secrets and other proprietary information without the Agreement, since California B & P Code § 17200 protects against unfair competition, including the misuse of trade secrets.[7] *Metro* supports this analysis: "[T]he employer will be able to restrain by contract only that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract." *Metro*, 22 Cal.App.4th at 861, 27 Cal.Rptr.2d 573 (quoting Hays, *Unfair Competition—Another Decade*, 51 Cal. L.Rev. 51, 69 (1963) (internal quotation marks omitted)). Furthermore, plaintiff had already willingly signed a legal confidentiality agreement. *See* Pl. Exh. C. Taken together, these factors indicate that defendant already enjoyed all of the protection of its trade

secrets and other confidential information that the law allows; paragraph 4 of the Agreement added nothing. Thus, the Agreement cannot qualify for the trade secret exception to section 16600. Because it also fails to meet the requirements for the narrow restraint exception, the Court finds that the Agreement violates California's strong public policy against non-compete clauses.

### 4. Application of § 16600

 The Court notes at this juncture that defendant's argument, that the Agreement cannot violate public policy because even if unenforceable, it is simply a nullity, ignores the realities of the marketplace. As between Aetna and an individual employee, the company is in an infinitely better position to acquaint itself with the applicable laws, and to know whether the non-compete clause violates section 16600. Employees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer (especially one of Aetna's magnitude) are legal, if draconian. Furthermore, even if they strongly suspect that a non-compete clause is unenforceable, such employees will be reluctant to challenge the legality of the contractual terms and risk the deployment of Aetna's considerable legal resources against them. Thus, the *in terrorem* effect of the Agreement will tend to secure employee compliance with its illegal terms in the vast majority of cases. Prospective future employers, too, may be reluctant to hire Aetna's workers; even if secure in the knowledge of the unenforceability of Aetna's non-compete clause, these employers may well wish to avoid the expense and energy

---

**6.** For the same reason, *Gordon v. Wasserman*, 153 Cal.App.2d 328, 314 P.2d 759 (1957), and the cases cited therein, are inapposite. That court specified that the "confidential" nature of the customer lists justified the enforceability of those clauses. Thus, those cases did not involve agreements not to solicit tens of thousands of individuals and entities whose identi-

ties and locations were matters of public knowledge.

**7.** The statute defines unfair competition as, in part, "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. B & P Code § 17200.

of defending a lawsuit in which they are likely to be joined. *Cf. Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1327 (9th Cir.1980); *Kolani v. Gluska*, 64 Cal.App.4th 402, 406, 75 Cal.Rptr.2d 257 (1998). In this way Aetna will be able to stifle marketplace competition for its human capital. This outcome is clearly in derogation of the fundamental public policy interests that section 16600 was intended to advance.

### D. Severability

As a final issue, defendant argues that ¶ 6 of the Agreement (the "severability clause") serves to save it even if part of the Agreement is determined to be unenforceable. The clause states, "I agree that if the scope of enforcement of this Agreement is ever disputed, a court or other trier of fact may modify and enforce it to the extent it believes is lawful and appropriate." In support of its severability argument, defendant cites the wording of section 16600 itself, which says that every contract that restrains the pursuit of one's chosen profession "is to that extent void."

In support of its position, defendant cites *Winston Research Corp. v. Minnesota Mining and Mfg. Co.*, 350 F.2d 134 (9th Cir.1965) and *Zajicek v. Koolvent Metal Awning Corp.*, 283 F.2d 127 (9th Cir.1960). Both cases are inapposite. In *Winston*, employees who had taken their employer's trade secrets and used them in the service of a competitor sought to have the non-disclosure agreements they had signed invalidated because the agreements contained an illegal non-compete clause. The court found the violative provision severable from the rest of the contract. *See Winston*, 350 F.2d at 140. *Zajicek* involved a group of licensees who had received the benefits of a contract for a number of months, then attempted to have the contract declared void rather than comply with their contractual obligations. Though the court found the non-compete provision of the contract illegal under section 16600, it held that in such a situation the provision was severable. *See Zajicek*, 283 F.2d at 129–31.

Both cases are entirely unlike the instant case. Here, as Aetna has emphasized throughout the litigation, the contract was never signed, Ms. Latona enjoyed no benefit from it, and Aetna never sought to enforce it against her. The case presents a wholly different issue: whether an employer may fire an employee for refusing to sign an agreement containing provisions in direct violation of public policy, then escape liability for wrongful termination on the grounds that other provisions of the agreement were inoffensive. The answer is clearly no. As the *Kolani* court recognized,

> [T]he policy of section 16600 would be undermined by [allowing such behavior]. Employers could insert broad, facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court, thus directly undermining the statutory policy favoring competition. Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation.

*Kolani*, 64 Cal.App.4th at 408, 75 Cal.Rptr.2d 257.

Aetna never gave plaintiff the option of signing only a portion of the Agreement. She was required to sign it in its entirety, complete with the illegal provisions. Aetna could have revised the Agreement or asked Ms. Latona to sign only those portions relating to trade secrets, but it did not. Instead, it presented the entire Agreement to plaintiff as a "take it or leave it" proposition. When she declined, Aetna fired her. Aetna cannot now be relieved of liability for a wrongful termination on the ground that if it had excised the offensive portions of the Agreement, plaintiff would have had no grounds to object to signing it.

On balance, the Court must follow *Kolani*'s instruction and find that the unen-

forceability of the Agreement cannot be saved by the severability clause.

### CONCLUSION

Aetna took the contract it uses in other states and, without regard to California law, and contrary to the clear prohibition contained in section 16600, compelled its California employees to sign it or be fired. Aetna's claim that it should not be held responsible for wrongful termination unless it "knew" the provision was unenforceable misses the mark.[8] Aetna knew it was operating in California and would be subject to its laws. Section 16600, or a version thereof, has been on the books since 1872. *See Bosley Medical Group v. Abramson*, 161 Cal.App.3d 284, 288, 207 Cal.Rptr. 477 (1984). It is not asking too much for Aetna to refrain from requiring its employees to sign presumptively illegal provisions and then firing them when they decline to do so.

IT IS SO ORDERED.

---

**8.** Plaintiff has argued that Aetna knew of the likely invalidity of the provision. Prior rulings by another judge in this case limited discovery as to whether Aetna believed the non-compete clause to be enforceable. Regardless, however, Aetna required its California employees to sign the non-compete Agreement; in firing those who refused, it acted at its peril.