Filed 2/3/15  Los Angeles Community College Dist. v. Gabrie CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br> Plaintiff and Respondent. <br><br> v. <br><br> CONSTANTINO GABRIE, <br><br> Defendant and Appellant, | B250381 <br><br> (Los Angeles County Super. Ct. No. BC483225) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Johnson, Judge.  Affirmed.

Best Best & Krieger, Kira L. Klatchko, and Irene S. Zurko for Plaintiff and Respondent.

Felahy Law Group, Allen B. Felahy, and Jennifer M. Yang for Defendant and Appellant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In this declaratory relief action brought by plaintiff Los Angeles Community College District against its former employee, defendant Constantino Gabrie, plaintiff sought a declaration of its duties under a settlement agreement the parties reached after plaintiff sought to terminate defendant's employment. The settlement agreement provided that defendant would be placed on paid administrative leave for over one year, and after that time, defendant would retire, and would receive "health insurance benefits provided to retirees." However, defendant failed to timely retire into the California State Teachers' Retirement System (CalSTRS), and CalSTRS determined he was ineligible for retiree health benefits.

Plaintiff sought a declaration that the settlement agreement did not require plaintiff to provide defendant with a private health insurance policy, but instead required plaintiff to obtain retiree health benefits from CalSTRS. After a one-day trial, the trial court issued a seven-page statement of decision finding the agreement called for defendant's participation in CalSTRS, and that plaintiff was under no obligation to purchase private insurance for defendant.

We affirm the judgment.

## BACKGROUND

Plaintiff's declaratory relief complaint made the following allegations: Defendant was a permanent academic employee of plaintiff, teaching dental technology courses at Los Angeles City College. On September 1, 2010, plaintiff sought defendant's dismissal for performance issues, and filed an Accusation with the Office of Administrative Hearings. Defendant appealed his dismissal, and a hearing on the appeal was set for January 2011. On December 13, 2010, the parties participated in a mandatory settlement conference with Administrative Law Judge Ralph B. Dash at the Office of Administrative Hearings. Defendant and his attorney, Lawrence Rosenzweig, appeared at the conference, as did several of plaintiff's representatives and plaintiff's counsel, Melanie Chaney.

The parties reached a tentative settlement at the conference. Because defendant was too young to retire and collect benefits, plaintiff would keep defendant on paid

2

administrative leave until January 31, 2012, which was a few days after his 55th birthday. Defendant would then resign and retire from his position, effective February 1, 2012. Defendant agreed not to apply for or accept any employment with plaintiff, and plaintiff agreed to remove all documents relating to his dismissal from his personnel file.

Defendant was concerned that he was not eligible for retirement benefits until 55½, so plaintiff agreed to hold its offer open until January 3, 2011, while defendant investigated his eligibility with CalSTRS further. On January 3, 2011, the parties participated in a telephonic status conference with Judge Dash. Defendant's counsel confirmed that defendant had learned he was eligible to retire at 55, but that if he deferred retirement until 55½, his retirement benefit would be about $200 per month greater. Therefore, defendant proposed that plaintiff leave him on the payroll until July 1, 2012, when defendant would be 55½. Plaintiff declined this proposal, and the parties ultimately settled their dispute under the original terms. The settlement agreement was signed on January 26, 2011. It provided, in pertinent part, that:

"2. In consideration for the promises contained here, Gabrie shall remain on paid administrative leave from his position as a faculty member through January 31, 2012. Gabrie hereby retires from his position as a faculty member of the District, effective February 1, 2012. Immediately upon execution of this agreement, Gabrie shall submit his letter of retirement. The letter shall be submitted in the format of the retirement letter attached hereto as Exhibit 1. The District will accept the letter immediately. The parties agree that Gabrie's retirement is irrevocable immediately upon execution of this Agreement by both parties.

"3. Gabrie shall be entitled to the CalSTRS contributions, vacation, sick leave, and health and welfare benefits provided by the District to him as a permanent academic employee of the District through January 31, 2012. Upon the effective date of his retirement, Gabrie shall be entitled to the health insurance benefits provided to retirees."

3

The agreement also contained an integration clause, providing that "[t]his Agreement constitutes an integration of the entire understanding and agreement by, between, and among the parties hereto and supersedes and is in lieu of any and all other agreements, statements or promises, written or oral, between Gabrie and the District. Any representations, warranties, promises, understandings, or conditions, whether written or oral, not specifically incorporated herein, shall not be binding upon any of the parties hereto."

Lastly, the agreement provided that if any term of the agreement was breached, the parties had the right to seek specific performance, or "any other necessary and proper relief, including . . . damages. . . ."

Defendant's answer to the complaint alleged that there was "no present and actual controversy" between the parties, and that "declaratory relief is not necessary or proper under the circumstances."

At the one-day court trial, plaintiff's witnesses, and even defendant, testified consistently with the complaint's allegations. Plaintiff's witnesses, which included human resources personnel, legal counsel, benefits administrators, and a union representative, testified that the purpose of the settlement agreement was to facilitate defendant's retirement, as he was too young to retire at the time the district initiated disciplinary proceedings.

Michael Shanahan, plaintiff's interim senior associate vice chancellor of human resources, testified that he attended the December 2010 settlement conference. At the settlement conference, the plaintiff informed defendant that if it succeeded in dismissing him, he would "lose access to district contributions toward retiree health care. To remedy that, he was offered a settlement package that included staying on salary through age 55, which is the minimum retirement age under . . . CalSTRS." Mr. Shanahan testified that the "whole point" of the settlement agreement was to facilitate defendant's retirement into CalSTRS so that he could draw health benefits under CalSTRS. In order to receive these benefits, a retiree must be at least 55, and must retire into the pension system immediately after termination of employment. In order to retire into CalSTRS, a retiree

4

must submit an application directly to CalSTRS. The district did not provide any insurance benefits to retirees other than those offered through CalSTRS. There was no discussion at the settlement conference of providing defendant with any private health benefits.

Kevin Jeter, plaintiff's associate general counsel, testified that he also attended the December 2010 settlement conference. Defendant was a member of the Los Angeles College Faculty Guild union. Retiree benefits are governed by the Joint Labor Management Benefits Agreement, which is incorporated into all the collective bargaining agreements for all union employees.

Mr. Jeter testified that plaintiff paid defendant through January 31, 2012, and defendant was separated from his employment on February 1, 2012, as required by the agreement. However, defendant did not immediately retire into CalSTRS. Mr. Jeter spoke with defendant's attorney in March 2012, to inquire why defendant had not retired. Defendant's counsel informed Mr. Jeter that defendant had not retired because his wife had a lien on his pension. Mr. Jeter informed defendant's counsel that defendant had to retire into CalSTRS within 120 days from the date of separation from his employment in order be eligible to receive health benefits.

Mr. Jeter did not hear back from defendant's counsel, and therefore the district filed this declaratory relief action on April 26, 2012, within the 120-day CalSTRS enrollment period.

Defendant submitted his retirement application on May 30, 2012, within the 120-day time limitation. However, CalSTRS would not allow defendant to retire with a February 1, 2012 retirement date because in August 2011, defendant had taken a new job with another CalSTRS entity, Pasadena Community College District. This was the first time plaintiff learned that defendant had taken another job. Defendant retired into CalSTRS with an effective date of July 1, 2012, which was more than 120 days after he separated from plaintiff's employment, so he was not eligible to enroll in plaintiff's retiree health benefits. Plaintiff has no authority to waive or extend this time period.

5

Darrell Eckersley is the chief grievances officer with defendant's union. He represents faculty members in disciplinary proceedings. In order to retire, an employee must first end their employment with plaintiff, and then must retire separately into CalSTRS. There is a minimum age of 55 to retire into CalSTRS. Under the union's collective bargaining agreement, the effective date of the retirement into CalSTRS must be no later than 120 days after resigning from plaintiff. Defendant was subject to this agreement. Mr. Eckersley attended the settlement conference as defendant's union grievance representative. The purpose of the agreement was to facilitate defendant's retirement into CalSTRS.

Leila Menzies, plaintiff's president of administrative services for risk management and health benefits, testified plaintiff's health benefits are governed by a master health benefits agreement. The agreement defines "retirement" as retiring through CalSTRS. This must be done within 120 days of separating from employment Defendant called Ms. Menzies in March 2012, asking to receive his health benefits. Ms. Menzies informed defendant that he had to retire through CalSTRS to receive his benefits. Defendant's retirement was delayed because he was receiving service credit through employment with another CalSTRS entity. Ms. Menzies asked CalSTRS if they could make an exception for defendant, and was told they could not, and that plaintiff had no right to waive or extend the 120-day period.

Defendant testified that the parties discussed keeping him on plaintiff's payroll until he reached the retirement age of 55. After the settlement conference, defendant confirmed with CalSTRS that the retirement age was 55, but that he would get a larger pension if he retired at 55½.

Defendant started working at Pasadena City College in August 2011. When he met with CalSTRS, he was never informed that taking another job could delay his retirement.

After plaintiff filed this lawsuit, defendant attempted to retire on May 30, 2012, because "it was the only way [he] could receive [his] health benefits." In March or April 2012, defendant learned that his benefits had to come from CalSTRS.

6

Defendant testified that he was a member of the Faculty Guild union, and that he was subject to the union's collective bargaining agreement. Defendant had access to the agreement.

Defendant also testified that the parties did not discuss private insurance at the settlement conference and that "there were discussions about retiree health benefits from the district pursuant to the bargaining agreement." He testified that plaintiff informed him, within the 120-day period, that he had to retire into CalSTRS in order to receive his health benefits. Defendant never asked anyone at the district about the impact of taking a part time job. Defendant is presently receiving a pension from CalSTRS, but is not receiving retiree health benefits through his employment with plaintiff.

The trial court issued a seven-page tentative statement of decision, finding that the evidence established that the only health insurance plaintiff provided to retirees was through the CalSTRS system, and that plaintiff "was not obligated to provide anything more to [defendant]." The trial court found that the "entire settlement agreement was premised on the fact that [plaintiff] would continue [defendant] on its payroll until he reached the minimum retirement age of 55 and could qualify for health insurance benefits by arranging a timely retirement through the STRS system." That decision became the trial court's final judgment after defendant failed to lodge any timely objections.

## DISCUSSION

### A.      Trial Court's Failure to Dismiss Declaratory Relief Action

Code of Civil Procedure section 1060 provides that any person "interested under a written instrument . . . or under a contract" may, "in cases of actual controversy relating to the legal rights and duties of the respective parties," bring an original action or cross-complaint for a declaration of its rights or duties. Granting relief under this section is discretionary; under section 1061, the trial court "may refuse to exercise the power granted by [section 1060] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (See also *DeLaura v. Beckett* (2006) 137 Cal.App.4th 542, 545 [a decision whether to grant declaratory relief is reviewed for abuse of discretion].)

7

Declaratory relief is available only "in cases of actual controversy relating to the legal rights and duties of the respective parties." (Code Civ. Proc., § 1060; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [" 'The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject' "]; *BKHN, Inc. v. Department of Health Services* (1992) 3 Cal.App.4th 301, 308-310.)

Defendant contends there was not an actual controversy between the parties because he submitted his retirement application to CalSTRS after the declaratory relief action was filed. However, plaintiff filed this action to obtain a declaration that defendant's timely retirement into CalSTRS was required in order to receive retiree health benefits under the settlement agreement, and a declaration that plaintiff had no duty to provide defendant with any health insurance other than that provided by CalSTRS. Clearly, defendant's submission of his retirement application did not resolve the controversy, as his status as a retiree had not yet been determined, and his enrollment in retiree health benefits had not been secured.

Defendant also contends this action was not "necessary or proper" because it was filed "preemptively . . . for a strategic purpose in order to prevent a potential breach from actually materializing." (See, e.g., *Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 376 ["California trial courts may consider in their section 1061 analysis whether the timing of the declaratory relief action suggests litigation strategy motivated the filing rather than a concern that judicial guidance was needed and would not be forthcoming absent the filing of a declaratory relief action."].) We are not persuaded. Here, there was an actual dispute regarding plaintiff's obligations to defendant, and plaintiff filed this complaint promptly in an effort to avoid harm to defendant; that is exactly the purpose of section 1060.

## B. Merits

Defendant contends this appeal turns on the interpretation of the settlement agreement, and therefore the standard of review is de novo. Plaintiff, in contrast, argues that we must apply the substantial evidence rule.

In construing a contract, "[w]hen no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence. [Citations.]" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955-956.)

Here, there is no material dispute in the evidence. All of the witnesses testified consistently. The only disagreement between the parties is how their contract is to be interpreted. Therefore, our review is de novo.

" ' "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' [Citations.] A [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." [Citation.]' " (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.)

Defendant argues that the contract did not specify that he was required to retire into CalSTRS to receive health benefits, as there was no mention of CalSTRS in the contract. He therefore reasons that the contract is "unambiguous," and is not susceptible to the interpretation urged by plaintiff. He also argues that the contract's integration clause prohibits reliance on any outside agreements such as the collective bargaining agreement governing retiree benefits. Lastly, defendant contends that he "should not be

9

deprived of his health insurance benefits as a result of a technicality through no fault of his own."

We find no ambiguity in the settlement agreement. The settlement agreement clearly provided that "Upon the effective date of his retirement, Gabrie shall be entitled to the health insurance benefits provided to retirees." The undisputed evidence established the only health benefits plaintiff provided to retirees were those administered through CalSTRS. The integration clause does not change our analysis of this undisputed fact. The whole purpose of the agreement was to facilitate defendant's retirement, and plaintiff repeatedly acted to safeguard defendant's interests, urging him to timely retire. Defendant knew he had to timely retire, as demonstrated by his submitting a retirement application to CalSTRS within 120 days of his separation from plaintiff. The only reason he did not receive the promised benefits was because he had taken employment with another CalSTRS entity, which extended the date on which he was eligible to retire, a circumstance of his own making.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

GRIMES, J.

We concur:

BIGELOW, P. J.

RUBIN, J.

10